**In re POLY–AMERICA, L.P., Ind. and d/b/a Pol–Tex International, and Poly–America GP, L.L.C., Relators.**

No. 04–1049.

Supreme Court of Texas.

Aug. 29, 2008.

Erica W. Harris, Susman Godfrey L.L.P., Houston, Craig T. Enoch, Winstead PC, Austin, Adam Brian Ross, Poly–America, LP, Grand Prairie, TX, for Relator.

Scott Fiddler, Law Office of G. Scott Fiddler, P.C., Houston TX, for Real Party in Interest.

Jeffrey C. Londa, Ogletree Deakins Nash Smoak & Stewart, P.C., Houston, Audrey Elaine Mross, Davis Munck Butrus, P.C., Kirk L. Pittard, Durham & Pattard, LLP, Dallas, Peter M. Kelly, Law Office Of Peter M. Kelly, P.C., Houston TX, for Amicus Curiae.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, and Justice JOHNSON joined.

HARRIET O'NEILL, Justice.

In this retaliatory-discharge case, the employee's employment contract contains an arbitration agreement that requires the employee to split arbitration costs up to a capped amount, limits discovery, eliminates punitive damages and reinstatement remedies available under the Workers' Compensation Act, and imposes other conditions on the arbitration process. We must decide whether any or all of these provisions are unconscionable and, if they are, whether the contract's severability clause preserves the arbitration right. We hold that the trial court did not abuse its discretion in allowing the arbitrator to assess the unconscionability of the agreement's fee-splitting and discovery-limitation provisions as applied in the course of arbitration. We further hold that the arbitration agreement's provisions precluding remedies under the Workers' Compensation Act are substantively unconscionable and void under Texas law. However, those provisions are not integral to the parties' overall intended purpose to arbitrate their disputes and, pursuant to the agreement's severability clause, are severable from the remainder of the arbitration agreement, which we conclude is otherwise enforceable. Accordingly, we conditionally grant the petition for mandamus.

## I. Facts

Johnny Luna began his employment with Pol–Tex International, d/b/a Poly–America, L.P., in October 1998. Upon his hiring, Luna signed an agreement to submit "all claims or disputes" to arbitration. Approximately four years later, Luna signed an amended agreement to arbitrate that contained substantially the same provisions. Both the 1998 and 2002 agreements provide that they are governed by the Federal Arbitration Act (FAA). 9 U.S.C. §§ 1–14. Additionally, both agreements contain a series of requirements for the arbitration between the parties. All claims must be asserted within a maximum of one year from the occurrence of the event from which the claim arises. Fees associated with arbitration—including but not limited to mediation fees, the arbitrators' fees, court reporter fees, and fees to secure a place for a hearing—are to be split between the parties, with the employee's share capped at "the gross compensation earned by the Employee in Employee's highest earning month in the twelve months prior to the time the arbitrator issues his award." Each side is permitted limited forms of discovery: twenty-five interrogatories (including sub-parts), twenty-five requests for production or inspection of documents or tangible things, and one oral deposition of no more than six hours. Parties may not use written depositions or requests for admission; the agreement prohibits discovery of either party's financial information except for the employee's earnings if the employee seeks lost wages, back pay, and/or front pay; and all aspects of the arbitration are deemed confidential. Finally, the arbitrator is stripped of authority to award punitive, exemplary, or liquidated damages, or to order reinstatement of employment.

In December 2002, Luna suffered a work-related neck injury when he accidentally hit his head on a pipe. Poly–America's company doctor examined Luna and diagnosed him with an acute cervical spine flexion injury. Luna subsequently filed a workers' compensation claim and began receiving physical therapy. Approximately two weeks later, Luna returned to work on a release for light duty; however, Luna continued to suffer pain and utilized previously scheduled vacation time to recover from his injury. After being warned by the company doctor that he needed to return to work and get off of workers' compensation if he wanted to keep his job,

Luna returned to work without restrictions on January 10, 2003. Upon his return, Luna noticed that another person was already being trained for his position, and he claims that his supervisor began to harass him. One month later, Luna told his supervisor that his neck continued to bother him and that he needed to return to the company doctor; the next day that Luna was scheduled to work, he was fired.

Luna filed this suit asserting claims for unlawful retaliatory discharge under section 451.001 of the Labor Code ("the Workers' Compensation Act"). TEX. LAB. CODE § 451.001–.003. Claiming that Poly–America acted with malice, ill will, spite, or specific intent to cause injury, Luna sought both reinstatement and the imposition of punitive damages. He additionally sought a declaratory judgment that the arbitration agreement was unenforceable because, among other reasons, its provisions violated public policy and were unconscionable. Luna submitted two affidavits—his own, and that of an expert witness—in support of his claims. Poly–America responded with a motion to compel arbitration which, after a hearing, the trial court granted.

Luna sought a writ of mandamus in the court of appeals, reasserting his argument that provisions of the arbitration agreement were substantively unconscionable. The court of appeals held that, in light of the fee-splitting provisions and limitations on remedies, the arbitration agreement as a whole was substantively unconscionable. 175 S.W.3d 315, 318. Poly–America sought review in this Court. We hold that the arbitration agreement's provision that eliminates available remedies under the Workers' Compensation Act is unenforceable, but we find that provision severable from the arbitration agreement as a whole and conditionally grant Poly–America's writ of mandamus.

## II. Standard of Review

 Mandamus is the proper means by which to seek review of an order compelling arbitration under the FAA. *In re Am. Homestar of Lancaster, Inc.,* 50 S.W.3d 480, 483 (Tex.2001). In *In re Palacios,* we recognized that it is "important for federal and state law to be as consistent as possible" in enforcement and review of provisions under the FAA. 221 S.W.3d 564, 565 (Tex.2006) (per curiam) (quoting *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex.2005)). Federal courts may not review orders compelling arbitration and staying litigation ("compel-and-stay orders") by interlocutory appeal. *See* 9 U.S.C. § 16(b)(1) ("[A]n appeal may not be taken from an interlocutory order . . . granting a stay of any action under Section 3 of this title."). Accordingly, as we noted in *Palacios,* it would be inappropriate to exercise our own mandamus power in a manner inconsistent with the federal courts' practice. *See Palacios,* 221 S.W.3d at 565. Although mandamus review is generally available in federal courts to review non-appealable interlocutory rulings, mandamus is granted only in exceptional cases. *See generally Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 288–90 & n. 13, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (holding that, where a particular order is not appealable, mandamus is available and "will be appropriate in exceptional cases"). As we acknowledged in *Palacios,* federal courts have applied this template to orders that cannot be appealed under the FAA, although they almost never grant mandamus relief. 221 S.W.3d at 565–66 ("Even after *Green Tree [Financial Corp.—Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)], the Fifth Circuit has held that federal mandamus review of an order staying a case for arbitration may still be available if a party can meet a 'particularly

heavy' mandamus burden to show 'clearly and indisputably that the district court did not have the discretion to stay the proceedings pending arbitration.' ") (quoting *Apache Bohai Corp. v. Texaco China, B.V.,* 330 F.3d 307, 310–11 (5th Cir.2003)). This general rule has been broadly applied to unappealable ancillary interlocutory orders in proceedings under the FAA, *see, e.g., Georgiou v. Mobil Exploration & Prod. Servs., Inc. U.S.,* 190 F.3d 538, 1999 WL 642871 at *3 (5th Cir. July 27, 1999) (dismissing appeal of order staying litigation in favor of arbitration proceeding in foreign forum, and denying mandamus because plaintiffs failed to carry the "particularly heavy burden" to warrant mandamus relief from such an order); *Cofab Inc. v. Phila. Joint Bd., Amalgamated Clothing & Textile Workers Union, AFL–CIO–CLC,* 141 F.3d 105, 110 (3d Cir.1998); and appears to also apply to compel-and-stay orders under section 16(b)(1), *see Douglas v. U.S. Dist. Court,* 495 F.3d 1062, 1065 (9th Cir.2007) (granting mandamus relief from compel-and-stay order); *Manion v. Nagin,* 255 F.3d 535, 538–40 & n. 4 (8th Cir.2001) (dismissing appeal of various interlocutory orders, including order compelling arbitration, and denying mandamus because Manion had not made "any showing that he [was] entitled to such extraordinary relief"); *McDermott Int'l, Inc. v. Underwriters at Lloyds Subscribing to Memorandum of Ins. No. 104207,* 981 F.2d 744, 748 (5th Cir.1993) ("This court has recognized

that [mandamus review of an order compelling arbitration] may be available [but] McDermott has failed to satisfy [the] demanding standard.").[1]

Although federal precedent in this area is not uniformly clear, it appears a federal court would be permitted—albeit not compelled—to address the merits of the mandamus arguments in this case. If such review were categorically unavailable and unconscionability determinations the sole realm of arbitrators, as the dissenting Justice proposes, development of the law as to this threshold issue would be substantially hindered if not precluded altogether. Nevertheless, federal precedent counsels against granting relief unless the stringent requirements for mandamus are met. *See Gulfstream,* 485 U.S. at 289, 108 S.Ct. 1133. Federal courts grant mandamus only upon demonstration of a "clear and indisputable" right to issuance of the writ: "First, the party seeking the issuance of the writ must have no other adequate means to attain the relief he desires. . . . Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. Third . . . the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court,* 542 U.S. 367, 380–81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). Our own mandamus standard is similar, requiring a demonstration that

---

**1.** While it is true that several of these cases pre-date the Supreme Court's decision in *Green Tree,* they do not pre-date the authority on which the Supreme Court relied in noting that an order compelling arbitration and staying rather than dismissing the underlying litigation "would not be *appealable.*" 531 U.S. at 87 n. 2, 121 S.Ct. 513 (citing 9 U.S.C. § 16(b)(1)) (emphasis added). Unlike the present case, the two cases in which the courts denied mandamus relief from compel-and-stay orders did not involve claims that

enforcement of the arbitration provisions would prevent the plaintiffs from vindicating important statutory rights. *See Manion,* 255 F.3d 535; *McDermott Int'l, Inc.,* 981 F.2d 744. In *Douglas,* the Ninth Circuit granted mandamus relief, concluding that a choice-of-law provision in the arbitration agreement would not allow enforcement of the agreement under circumstances that the forum state would deem unconscionable. *Douglas,* 495 F.3d at 1068.

the trial court clearly abused its discretion by failing to correctly analyze or apply the law and a determination that the benefits of mandamus outweigh the detriments such that an appellate remedy is inadequate. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex. 2004). Because arbitration is intended to provide a lower-cost, expedited means to resolve disputes, mandamus proceedings will often, if not always, deprive the parties of an arbitration agreement's intended benefits when a compel-and-stay order is at issue; accordingly, courts should be hesitant to intervene. With these standards in mind, we turn to the compel-and-stay order in this case.

### III. Unconscionability and the Federal Arbitration Act

 Poly–America argues that the FAA's "strong presumption" favoring arbitration applies in this case, and furthermore that the FAA preempts all state public-policy grounds for finding the agreement to arbitrate unenforceable. *See In re R & R Personnel Specialists of Tyler, Inc.,* 146 S.W.3d 699, 705 (Tex. App.—Tyler2004) (holding that the FAA preempts "any public policy underlying the Texas workers' compensation statutes that is contrary to the enforceability of arbitration agreements"). Because neither this presumption nor federal preemption applies in a state court's assessment of whether parties have entered into a valid and enforceable agreement to arbitrate under state contract law, we disagree.

 Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). Thus, an agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state. *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 606 (Tex.2005) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). In determining the validity of an agreement to arbitrate under the FAA, courts must first apply state law governing contract formation. *See* 9 U.S.C. § 2; *First Options,* 514 U.S. at 944, 115 S.Ct. 1920.

 The United States Supreme Court has repeatedly emphasized that "state law, whether of legislative or judicial origin, is applicable [to the determination of the validity of an agreement to arbitrate] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas,* 482 U.S. 483, 493 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). Thus, courts "may not ... invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Perry,* 482 U.S. at 493 n. 9, 107 S.Ct. 2520 ("A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [section 2].").

 However, the purpose and language of the FAA require only that agreements to arbitrate be placed "upon the *same* footing as other contracts." *Doctor's Assocs.,* 517 U.S. at 687, 116 S.Ct. 1652 (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)) (emphasis added); *see also* H.R. REP. No. 68–96, at 1 (1924) (noting that by enacting section 2, Congress sought to place agreements to arbitrate "upon the same footing as other contracts, where [they] belong[ ]"). *Perry* makes clear that state courts may not fashion special rules regarding the enforceability

of arbitration contracts *per se*. *See Perry*, 482 U.S. at 492 n. 9, 107 S.Ct. 2520. Furthermore, once an enforceable contract to arbitrate is found, there is a strong federal presumption in favor of arbitration such that myriad doubts—as to waiver, scope, and other issues not relating to enforceability—must be resolved in favor of arbitration. *See, e.g., In re FirstMerit Bank*, 52 S.W.3d 749, 752 (Tex.2001); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex.1995). However, a state court must initially determine—through the neutral application of its own contract law—whether an enforceable agreement exists in the first instance, and whether "generally applicable contract defenses ... may be applied to invalidate arbitration agreements without contravening" the policies of the FAA. *Doctor's Assocs.*, 517 U.S. at 687, 116 S.Ct. 1652. Thus, in this case, if a contract limiting damages or restricting other remedies under the Workers' Compensation Act is *generally* unenforceable under Texas law, an arbitration contract with these same limitations will also be unenforceable.

■ Nevertheless, under Texas law, as with any other contract, agreements to arbitrate are valid unless grounds exist at law or in equity for revocation of the agreement. The burden of proving such a ground—such as fraud, unconscionability or voidness under public policy—falls on the party opposing the contract. *See FirstMerit Bank*, 52 S.W.3d at 756. Thus, while we reject Poly–America's assertions that we must apply a presumption favoring arbitration in assessing whether the parties entered into an enforceable agreement under Texas law and that the FAA preempts Texas public policies that may make certain contractual provisions generally unenforceable, Luna nevertheless bears the burden to establish that the challenged provisions are unenforceable.

## IV. Arbitration and Unconscionability Under Texas Law

### A. General Standard

■ Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law; there is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and, in fact, Texas law has historically favored agreements to resolve such disputes by arbitration. *See Advance PCS*, 172 S.W.3d at 608; *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex.1996); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996).

■ Unconscionable contracts, however—whether relating to arbitration or not—are unenforceable under Texas law. A contract is unenforceable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *FirstMerit Bank*, 52 S.W.3d at 757; *see also In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex.2002) ("[S]ubstantive unconscionability ... refers to the fairness of the arbitration provision itself."). Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided. *See* DAN B. DOBBS, 2 LAW OF REMEDIES 703, 706 (2d ed.1993); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (1979) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particu-

lar bargains or terms unenforceable on grounds of public policy."). Although not subject to precise doctrinal definition, *see Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 498 (Tex.1991) (GONZALEZ, J., concurring), unconscionability—as delineated by the above principles—has been recognized and applied by this Court for well over a century. *See, e.g., Flanagan v. Pearson*, 61 Tex. 302, 307 (1884); *Fowler v. Stoneum*, 11 Tex. 478, 493 (1854); *Hemming v. Zimmerschitte*, 4 Tex. 159, 166 (1849); *Luckett v. Townsend*, 3 Tex. 119, 131 (1848).

 Whether a contract is contrary to public policy or unconscionable at the time it is formed is a question of law. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex.2006). Because a trial court has no discretion to determine what the law is or apply the law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

**B. Arbitration and Statutory Rights**

 An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may "effectively vindicate his statutory rights." *In re Halliburton*, 80 S.W.3d at 572. Federal courts, analyzing the enforceability of arbitration provisions relating to federal statutory claims, have noted that such contracts are not enforceable when a party is forced to "forgo the substantive rights afforded by the statute," as opposed to merely "submit[ting] to resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In the context of federal claims, either an expres-

sion of federal intent to exclude certain categories of claims from arbitration, *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), or the excessive waiver of statutory rights, *see Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346, may render a particular dispute un-arbitrable. State courts, bound by the FAA under the supremacy clause, have more limited power, as the FAA preempts state laws that specifically disfavor arbitration. *Perry*, 482 U.S. at 492 n. 9, 107 S.Ct. 2520; *see Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992) (holding that the FAA preempts state statutes to the extent they are inconsistent with the FAA's purpose to require courts to compel arbitration when the parties have so provided in their contracts).

 However, where a particular waiver of substantive remedies or other provision of a contract is unconscionable—independent of the agreement to arbitrate—it will be unenforceable even though included in an agreement to arbitrate. *See Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647 ("[A]rbitration agreements are enforceable, 'save upon such grounds as exist at law or in equity for the revocation of any contract.' ") (quoting 9 U.S.C. § 2). To determine the permissibility of restrictions on a particular worker's access to statutory rights, we analyze the provisions of the actual statute at issue; thus, to analyze the enforceability of the various restrictions and waivers in the employment contract at issue in this case, we turn to the retaliatory-discharge provisions of the Texas Workers' Compensation Act, TEX. LAB. CODE §§ 451.001–.003.

**C. Purpose and Structure of the Texas Workers' Compensation Act's Anti–Retaliation Provisions**

 The Texas Workers' Compensation Act was enacted to protect Texas

workers and employees. *Fid. & Cas. Co. of N.Y. v. McLaughlin,* 134 Tex. 613, 135 S.W.2d 955, 956 (1940). The Texas Legislature enacted the original Workers' Compensation Act in 1913 in response to the needs of workers who, despite a growing incidence of industrial accidents, were increasingly being denied recovery. *Kroger Co. v. Keng,* 23 S.W.3d 347, 350 (Tex.2000); *Tex. Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 510 (Tex.1995). In order to ensure compensation for injured employees while protecting employers from the costs of litigation, the Legislature provided a mechanism by which workers could recover from subscribing employers without regard to the workers' own negligence, *see Kroger,* 23 S.W.3d at 351, while limiting the employers' exposure to uncertain, possibly high damage awards permitted under the common law, *see Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 407 (Tex.1985). In light of the purposes of the Workers' Compensation Act as a whole, "[i]t is the settled policy of this State to construe liberally the provisions of the ... [l]aw, in order to effectuate the purposes for which it was enacted." *Huffman v. S. Underwriters,* 133 Tex. 354, 128 S.W.2d 4, 6 (1939) (citations omitted). As we have recently noted, "[b]ecause we should liberally construe the Workers' Compensation Act in favor of the injured worker, a strained or narrow construction of [the Act] would be improper. Moreover, it would be injudicious to construe the statute in a manner that supplies by implication restrictions on an employee's rights that are not found in ... [the] plain language." *Kroger,* 23 S.W.3d at 349.

 The Texas Workers' Compensation Act provides that a subscriber to the workers' compensation system may not "discharge or in any other manner discriminate against an employee because the employee has ... filed a workers' compen-

sation claim in good faith." TEX. LAB.CODE § 451.001–.001(1). The Legislature's purpose in enacting section 451.001 was to protect persons entitled to benefits under the Act and to prevent them from being discharged for seeking to collect those benefits. *See Tex. Steel Co. v. Douglas,* 533 S.W.2d 111, 115 (Tex.Civ.App.-Fort Worth 1976, writ ref'd n.r.e.). Since recovery of benefits under the Workers' Compensation Act is the exclusive remedy available to injured employees of subscribing employers, *see* TEX. LAB.CODE § 408.001(a), the availability of remedies for retaliatory discharge protects employees' exercise of their statutory rights to compensation under the Act. *See Padilla v. Carrier Air Conditioning,* 67 F.Supp.2d 650, 664 (E.D.Tex.1999); *Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385, 389 (Tex.App.-Texarkana 1990, writ denied). In accordance with these principles, the anti-retaliation provisions of the Act must protect employees even before they have actually filed a claim, because otherwise "the law would be completely useless and would not accomplish the purpose for which it was enacted.... [A]ll the employer would have to do in order to avoid the consequences of the statute would be to fire the injured workman before he filed the claim." *Tex. Steel Co.,* 533 S.W.2d at 115.

 "The decisions of this State do not look with favor upon contracts waiving rights arising under the Workmen's Compensation Law." *Huffman,* 128 S.W.2d at 6. Such waivers affect not only the individual employee subject to the waiver, but also the public, which bears the cost of the workers' compensation program. *See Holt v. Cont'l Group, Inc.,* 708 F.2d 87, 91 (2d Cir.1983) ("A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the Act."). Therefore, we

have invalidated contracts that purport to relieve employers of their obligations under the Workers' Compensation Act. *See James v. Vernon Calhoun Packing Co.*, 498 S.W.2d 160, 162 (Tex.1973) (noting that "[w]e are much impressed with the idea that there is a large element of public interest in the administration of [the Workers' Compensation Act]"); *Hazelwood v. Mandrell Indus. Co.*, 596 S.W.2d 204, 206 (Tex.Civ.App.-Houston [1st Dist.] 1990, writ ref'd n.r.e.) ("If . . . this balance [established by the Act] is tipped so that the employee's benefits under the statute are substantially reduced, the clear intent of the legislature is thwarted."). We have likewise held unenforceable contracts that explicitly relieve employers of tort liability, relying either on common law prohibitions against such contracts, *see Barnhart v. Kansas City M. & O. Ry. Co. of Tex.*, 107 Tex. 638, 184 S.W. 176, 179 (1916), or upon the Workers' Compensation Act, *see Petroleum Cas. Co. v. Smith*, 274 S.W.2d 150, 151 (Tex.Civ.App.-San Antonio 1954, writ ref'd) (noting that "[t]he right to workmen's compensation is statutory, and cannot be abridged by private agreements or special applications for employment"); *Clevenger v. Burgess*, 31 S.W.2d 675, 678 (Tex.Civ.App.-Beaumont 1930, writ ref'd); *Tex. Employers Ins. Ass'n v. Peppers*, 133 S.W.2d 165, 167 (Tex.Civ.App.-Galveston 1939, writ dism'd) ("[T]he courts will not enforce contracts which are either expressly or impliedly prohibited by the [Workers' Compensation] Act.").

This case concerns the validity of a subscribing employer's use of an agreement that, in the course of requiring arbitration between the parties in work-related disputes, imposes a series of procedural and substantive limits on the employee's rights. We must analyze the challenged limitations in light of the policies underlying the Workers' Compensation Act, and the purposes of its anti-retaliation provisions, to determine whether they improperly shift the cost of injury from a subscribing employer onto its employees in contravention of the Act's provisions. *Cf. Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 550 (Tex. 2001) (noting that the agreements did not "shift the risk of on-the-job injuries to the employees"); *see also Gentry v. Superior Court*, 42 Cal.4th 443, 456, 64 Cal.Rptr.3d 773, 782, 165 P.3d 556 (2007), *cert. denied* —— U.S. ——, 128 S.Ct. 1743, 170 L.Ed.2d 541 (2008) (noting that under California law, when an employee is bound by a predispute arbitration agreement to adjudicate nonwaivable statutory employment rights, the arbitration agreement may not limit damages, discovery must be sufficient to arbitrate the claim, there must be a written arbitration decision, and the employer must pay all costs "unique to arbitration").

## V. The Challenged Arbitration Provisions

### A. Limitation of Remedies

 The Workers' Compensation Act specifies that "[a] person who violates section 451.001 is liable for reasonable damages incurred by the employee as a result of the violation," and that "[a]n employee discharged in violation of section 451.001 is entitled to reinstatement in the former position of employment." TEX. LAB. CODE § 451.002(a)-(b). We have previously explained that "reasonable damages" are not limited to actual damages, *see Azar Nut Co. v. Caille*, 734 S.W.2d 667, 669 (Tex.1987), but may include future damages, as well as exemplary or punitive damages when it is shown that the employer acted with actual malice in retaliating against the employee for filing a workers' compensation claim. *See Cont'l Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 454 (Tex.1996); *Carnation Co. v. Borner*, 610

S.W.2d 450, 454–55 (Tex.1980). The arbitration agreement in this case eliminates two types of remedies available under the anti-retaliation provisions of the Workers' Compensation Act, prohibiting the arbitrator from ordering reinstatement or awarding punitive damages. *See* TEX. LAB.CODE § 451.002 (providing for reinstatement and an award of reasonable damages). Luna contends these limitations render the agreement unconscionable and unenforceable because they prevent him from effectively vindicating his statutory rights in arbitration, thus undercutting the basic assumptions of the FAA. *See Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647 (noting that claims under other federal statutes are appropriate for arbitration so long as the litigant can effectively vindicate any statutory rights). The court of appeals agreed with Luna. 175 S.W.3d at 323–24. Although it noted other courts' decisions upholding punitive-damages waivers, *id.* at 323, and further noted that preclusion of statutory remedies may not always portend unconscionability, *id.,* the court held that the preclusion of remedies here interfered with Luna's ability to bring his retaliatory-discharge claim under the Workers' Compensation Act and thus weighed toward the contract's unconscionability, *id.*

Poly–America argues that the court of appeals' decision conflicts with *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 822 (Tex.App.-San Antonio 1996, no writ), and decisions of other courts indicating that limitations of remedies are permissible, *e.g., Inv. Partners v. Glamour Shots Licensing, Inc.,* 298 F.3d 314, 318 n. 1 (5th Cir.2002). Because we view the anti-retaliation provisions of the Workers' Compensation Act as a non-waivable legislative system for deterrence necessary to the nondiscriminatory and effective operation of the Texas Workers' Compensation system as a whole, we agree with Luna

that the provisions eliminating key remedies under the statute are unenforceable.

■ An arbitration agreement covering statutory claims is valid so long as "the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights." *In re Halliburton,* 80 S.W.3d at 572. " '[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. 3346). In this case, Luna contends Poly–America acted with actual malice in unlawfully discharging him, a claim for which the Workers' Compensation Act allows punitive damages. *See* TEX. LAB. CODE § 451.002; *Azar Nut Co.,* 734 S.W.2d at 668. Permitting an employer to contractually absolve itself of this statutory remedy would undermine the deterrent purpose of the Workers' Compensation Act's anti-retaliation provisions. In creating the Texas Workers' Compensation Act, the Legislature carefully balanced competing interests—of employees subject to the risk of injury, employers, and insurance carriers—in an attempt to design a viable compensation system, all within constitutional limitations. *See Garcia,* 893 S.W.2d at 521. Were we to endorse Poly–America's position and permit enforcement of these remedy limitations, a subscribing employer could avoid the Act's penalties by conditioning employment upon waiver of the very provisions designed to protect employees who have been the subject of wrongful retaliation.

Our decision in *Lawrence,* 44 S.W.3d 544, is fully consistent with this view. There, employees of a non-subscribing em-

ployer elected, after they were hired, to participate in an employer benefit plan that would provide injured employees with specified benefits in lieu of common law remedies. *Id.* at 545–46. We refused to void the agreement on public-policy grounds, discerning "no clear legislative intent to prohibit agreements such as those presented." *Id.* at 545. We emphasized that participation in the workers' compensation program is voluntary for employers in Texas, and that courts are ill equipped to weigh whether a non-subscribing employer's particular benefits plan would undermine the purposes of the Workers' Compensation Act. *See id.* at 551–53.[2] Our decision was specifically tailored to *non-subscribing* employers who elected *not* to participate in the workers' compensation program. Importantly, we distinguished cases involving contracts imposed as a condition of employment, emphasizing that "[t]he distinction between an employment contract that requires a prospective employee, as a condition of the receipt or retention of employment, to agree to limit the employer's liability ... and a voluntary occupational insurance program, in which the employee has the option to enroll ... is decisive." *Lawrence*, 44 S.W.3d at 550 (quoting *Brito v. Intex Aviation Servs., Inc.*, 879 F.Supp. 650, 654 (N.D.Tex.1995)) (citing *Clevenger*, 31 S.W.2d at 678; *Barnhart*, 184 S.W. at 176)).

This case presents just such a liability-limiting provision, imposed as a condition of employment, which we suggested in *Lawrence* would violate public policy. *See id.* Such waivers would allow subscribing employers to enjoy the Act's limited-liability benefits while exposing workers to exactly the sort of costs—of injuries paid for by the employee for fear of retribution for

making a claim—that the Act is specifically designed to shift onto the employer. The balance established by the Act is thus "tipped so that the employee's benefits under the statute are substantially reduced, [and] the clear intent of the legislature is thwarted." *Hazelwood*, 596 S.W.2d at 206. As we have previously refused to enforce private agreements that allow subscribing employers to reap the system's benefits while burdening employees with the cost of injury, so too we find the provisions of the present contract—which substantively limit Poly–America's liability for wrongful retaliation and thereby undermine the deterrent regime the Legislature specifically designed to protect Texas workers—void under Texas law. *See Tex. Steel*, 533 S.W.2d at 115; *Holt*, 708 F.2d at 91.

## B. Fee–Splitting Provision

The arbitration agreements provide that, in the event of a claim, all fees related to arbitration—including but not limited to mediation fees, the arbitrators' fees, costs of procuring a location for a hearing, and court reporter fees—will be split equally between the employer and the employee, with the employee's contribution capped at an amount equal to "the gross compensation earned by the Employee in Employee's highest earning month in the twelve months prior to the time the arbitrator issues his award." The court of appeals held that this provision "weigh[ed] heavily toward a finding of substantive unconscionability." 175 S.W.3d at 322. Poly–America argues that this was clear error: first, because the court of appeals improperly inferred that Luna could not afford likely arbitration costs based solely on subjective evidence and, second, because it failed to compare such costs to the

---

**2.** The Texas Legislature, exercising its policy-making role, responded immediately and out-

lawed such plans. *See* Tex. Lab.Code § 406.033(e).

expected costs of litigation.[3] Luna responds that it was Poly–America that failed to present evidence of the comparative cost of litigation and that the evidence presented was sufficient to allow an objective determination that the likely costs of arbitration were beyond Luna's financial means. We begin with the evidentiary challenge.

### 1. Evidentiary Challenge

 Poly–America claims that the court of appeals, by crediting Luna's factual allegations concerning his financial inability to share arbitration costs, improperly applied a new evidentiary standard that will require all parties seeking to compel arbitration to engage in expensive discovery whenever a resisting party submits cursory and subjective evidence that arbitration costs are "unaffordable." This evidentiary burden, Poly–America argues, is contrary to Texas law and policy that supports summary disposition of motions to compel arbitration. In response, Luna contends the facts upon which the court of appeals relied could have been controverted by affidavit or cross-examination, which Poly–America failed to do; consequently, the court of appeals based its ruling on the undisputed facts established by Luna's affidavits. Both parties cite *Anglin*, 842 S.W.2d at 269, to support their respective positions. There, we defined the proper circumstances under which a trial court should hold a full evidentiary hearing on a motion to compel arbitration:

> Because the main benefits of arbitration lie in expedited and less expensive disposition of a dispute, and the legislature has mandated that a motion to compel

arbitration be decided summarily, we think it unlikely that the legislature intended the issue to be resolved following a full evidentiary hearing in all cases. We also envision that the hearing at which a motion to compel arbitration is decided would ordinarily involve application of the terms of the arbitration agreement to undisputed facts, amenable to proof by affidavit. With these considerations in mind, we hold that the trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts.

*Id.* Because the only facts Luna presented on the motion to compel were uncontroverted under this standard—Luna's affidavits accompanying his original petition were neither contradicted nor challenged in Poly–America's response—we believe the court of appeals acted properly in crediting those facts on appeal.

Luna attached to his original petition his own affidavit and that of an expert witness providing detailed estimates of the likely cost of arbitration in Luna's case, and Luna's expected share under the agreement's capped fee-splitting provision based on his monthly salary (approximately $3,300.00) as a Poly–America supervisor. Luna described his anticipated share of the arbitration costs as "way more money than I can afford," and averred that, if he

---

**3.** The Society for Human Resource Management Texas State Council submitted an *amicus* brief supporting Poly–America's arguments, arguing that the court of appeals wrongfully failed to compare Luna's alleged costs with the prospective cost of litigation.

The Texas Trial Lawyers Association likewise submitted an *amicus* brief supporting Luna, arguing that unconscionability should be determined by comparing "the general financial condition of the claimant's peer group" to estimated arbitration costs.

had to pay such an amount to have his claim determined, he would be unable to pursue his claim against the company unless he could find an attorney willing to pay those fees. Luna recounted that he had attempted to retain two attorneys, but they had refused to represent him on a contingent-fee basis because of the arbitration agreement.

Poly–America did not dispute these facts but asserted legal arguments in its pleadings that the cost provisions, as written or as applied, were not unconscionable under Texas law. At the hearing on its motion to compel, Poly–America again asserted only legal arguments in response to Luna's challenge to the cost-splitting provision. There is no indication in the record that the trial court discredited or otherwise viewed the facts recited in Luna's affidavits as insufficient; rather, on the basis of Poly–America's legal arguments, the trial court granted the motion to compel. This disposition was consistent with our statements in *Anglin* in which we indicated that motions to compel should be decided summarily unless disputed issues of fact require a full evidentiary hearing. *See id.*

However, the court of appeals clearly differed from the trial court in its view of the law. It held that the trial court's granting of the motion to compel—in light of Luna's averred inability to afford his likely arbitration costs and the agreement's other limitations—was an abuse of discretion. 175 S.W.3d at 318–20. In doing so, the court of appeals properly credited the undisputed facts contained in Luna's affidavits as to the total expected cost of arbitration and Luna's anticipated share based upon his pre-termination monthly income. *Id.* at 319–20. Poly–America contends the court of appeals improperly ruled based on Luna's subjective, and thus practically incontrovertible, belief that he could not afford arbitration, which does not satisfy this Court's requirements of "specific" evidence to support claims of unconscionably expensive arbitration. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex.2007). However, the court of appeals relied not solely upon Luna's belief but upon his and his expert's specific monetary estimates, which provided objective support for Luna's uncontroverted claim that arbitration costs would preclude his pursuit of the lawsuit. *See* 175 S.W.3d at 319. The court of appeals did not, therefore, rely solely on subjective and incontrovertible allegations.

## 2. Unconscionability of Fee–Splitting Provisions

Poly–America alternatively challenges the court of appeals' conclusion that the agreement's cost-allocation provisions favor a finding of unconscionability because the court did not consider the relative costs that Luna would likely incur if the case were litigated in court—costs that, based on Poly–America's estimates, would greatly exceed the capped cost of arbitration—and Luna failed to provide any evidence of the actual cost of arbitration that he would bear. Although we have no doubt that some fee-splitting provisions may operate to discourage employees like Luna from seeking vindication of their rights under the Workers' Compensation Act, we must agree with Poly–America that the trial court did not abuse its discretion in ordering arbitration in this case.

Courts across the country have universally condemned the use of fee-splitting agreements in employment contracts that have the effect of deterring potential litigants from vindicating their statutory rights in an arbitral forum. *See Green Tree*, 531 U.S. at 90–91, 121 S.Ct. 513. Some courts have gone so far as to find fee-sharing agreements unenforceable *per se. See, e.g., Cole v. Burns Int'l Sec.*

*Servs.,* 105 F.3d 1465, 1483–85 (D.C.Cir. 1995), *cited in Halliburton,* 80 S.W.3d at 572; *Shankle v. B–G Maint. Mgmt. of Colo., Inc.,* 163 F.3d 1230, 1233–35 (10th Cir.1999); *Paladino v. Avnet Computer Techs., Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998). These courts reason that "an employee can never be required, as a condition of employment, to pay an arbitrator's compensation in order to secure the resolution of statutory claims. . . . [T]his would surely deter the bringing of arbitration and constitute a *de facto* forfeiture of statutory rights." *Cole,* 105 F.3d at 1468; *accord Shankle,* 163 F.3d at 1235 ("Such a result clearly undermines the remedial and deterrent functions of . . . anti-discrimination laws.").

 We agree that fee-splitting provisions that operate to prohibit an employee from fully and effectively vindicating statutory rights are not enforceable. *See Halliburton,* 80 S.W.3d at 572. However, this Court joins the majority of other courts which—though recognizing the same policy concerns articulated by courts holding fee-splitting arrangements *per se* unconscionable—require *some evidence* that a complaining party will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum. *See U.S. Home Corp.,* 236 S.W.3d at 764; *FirstMerit Bank,* 52 S.W.3d at 756–57. As federal courts have likewise recognized:

> [I]n some cases, the potential of incurring large arbitration costs and fees will deter potential litigants from seeking to vindicate their rights in the arbitral forum. . . . [I]f the fees and costs of the arbitral forum deter potential litigants, then that forum is clearly not an effective, or even adequate, substitute for the judicial forum. . . . [T]he burden of demonstrating that incurring such costs is likely under a given set of circumstances

rests, at least initially, with the party opposing arbitration.

*Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 659–60 (6th Cir.2003); *accord Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549, 556 (4th Cir.2001); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 16 (1st Cir.1999).

 Luna contends the magnitude of the fee he could incur under the arbitration agreement, which he estimates to be as high as $3,300, will prevent him from pursuing his claim. Poly–America counters that litigation costs would be much higher, and therefore the arbitration agreement's capped cost-splitting provision benefits the employee and cannot be unconscionable. It is true that in evaluating the enforceability of fee-splitting provisions, some courts take into account the relative costs of arbitration versus litigation. *See, e.g., Bradford,* 238 F.3d at 556 n. 5 (focusing upon "a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs"). However, at this stage of the proceedings, much of this evidence is necessarily speculative, and thus counsels against a court's *ex ante* interference with arbitration.

We do not doubt that arbitration costs might be so high in a given case as to preclude access to the forum. But "the 'risk' that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree,* 531 U.S. at 91, 121 S.Ct. 513. Luna has not demonstrated that the ability to pursue his claim in the arbitral forum hinges upon his payment of the estimated costs; to the contrary, depending upon the circumstances, Luna may not have to bear any cost at all, and

Poly–America has presented some evidence that the capped cost-splitting arrangement may even benefit Luna. The fee-splitting provision in Luna's arbitration agreement caps his share of costs at "the gross compensation earned by Employee in Employee's highest earning month in the *twelve months prior to the time the arbitrator issues his award.*" (Emphasis added). Luna, however, presented evidence of his "highest monthly salary *in the year preceding [his] termination from the company,*" a period necessarily earlier than that relevant under the arbitration agreement. The record contains no fact-based estimation of Luna's wages in the relevant time period and, thus, no evidence of his likely share of arbitration costs.

Just as we allow litigants who demonstrate an inability to pay costs to proceed with their claims in court, however, we see nothing that would prevent arbitrators from fairly adjusting employee cost provisions when necessary to allow full vindication of statutory rights in the arbitral forum. *See* Tex.R. Civ. P. 145. The contract presented in this case specifically provides that the arbitrator may modify unconscionable terms; if the cost provisions precluded Luna's enforcement of his non-waivable statutory rights, they would surely be unconscionable for the reasons we have explained and the arbitrator would be free to modify them. The arbitrator is better situated to assess whether the cost provision in this case will hinder effective vindication of Luna's statutory rights and, if so, to modify the contract's terms accordingly. *See Halliburton,* 80 S.W.3d at 572. We conclude the trial court did not abuse its discretion in refusing to declare the contract's cost-splitting provision unconscionable and nullify the arbitration agreement.

## C. Discovery Limitations

■ The 2002 agreement provides that each party may serve on the other a single set of twenty-five interrogatories (including sub-parts) and one set of twenty-five requests for production or inspection of documents or tangible things. Additionally, the agreement includes limitations alleged by Luna to be unconscionable: (1) a limitation of each party to a single, six-hour deposition; (2) a prohibition on requests for admission; (3) a ban on inquiry into Poly–America's finances; and (4) a confidentiality provision requiring confidentiality of the parties and their attorneys regarding all aspects of the arbitration. Luna contends these limitations make it virtually impossible for him to prove his claim of retaliatory discharge and render the arbitration agreement unconscionable.

Although an issue of first impression in this Court, several courts around the country have analyzed the enforceability of similar arbitration provisions limiting parties' access to various forms of discovery. Applying a rule functionally equivalent to that used to analyze fee-splitting provisions, these courts refuse to enforce such limitations when adequate evidence is presented that a plaintiff's ability to present his or her claims in an arbitral forum is thereby hindered. *See, e.g., Hulett v. Capitol Auto Group, Inc.,* No. 07–6151–AA, 2007 WL 3232283, at *4–*5 (D.Or. Oct.29, 2007) (holding discovery restrictions that prohibited requests for admission or interrogatories and limited parties to three depositions unconscionable because they "serve to unreasonably withhold information from plaintiff that would otherwise be available through discovery, thus hindering her ability to present her claims in an arbitration forum"); *accord Ostroff v. Alterra Healthcare Corp.,* 433 F.Supp.2d 538, 547 (E.D.Pa.2006). Courts upholding arbitration provisions containing discovery limitations have done so in recognition of the same principle, but determined that a par-

ticular party failed to provide adequate evidence that the provisions "prove insufficient to allow ... claimants ... a fair opportunity to present their claims." *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647; *see, e.g., In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286–87 (4th Cir.2007); *Amisil Holdings, Ltd. v. Clarium Capital Mgmt.*, No. C06–05255MJJ, 2007 WL 2768995, at *4 (N.D.Cal. Sept.20, 2007) ("[Claimant] has not adequately demonstrated why arbitration under the AAA rules would deny it a fair opportunity to present its claims.").

■■■■ We agree with these courts that, where the underlying substantive right is not waivable, *ex ante* limitations on discovery that unreasonably impede effective prosecution of such rights are likewise unenforceable. However, because the relevant inquiry depends upon the facts presented in a given case and the particular discovery limitations' effect upon the relevant statutory regime, we are doubtful that courts—assessing claims and discovery limitations before arbitration begins—are in the best position to accurately determine which limits on discovery will have such impermissible effect.

In this case, Luna's expert witness testified that in most employment-discharge cases the employer only needs to take the plaintiff's deposition, while the plaintiff generally needs testimony from a number of witnesses to disprove the employer's likely defense that termination was based on poor performance. Additionally, the expert stated, the employee will likely wish to depose additional witnesses to show a pattern or practice of discrimination, whereas the employer typically has a ready pool of available employees and managers to assist in preparing for the arbitration. For these reasons, the expert concluded, the arbitration agreement's discovery limitations "significantly reduce the

plaintiff's ability to prevail in arbitration, regardless of how strong a plaintiff's case is on the merits."

We agree that if the discovery limitations the arbitration agreement imposes operate to prevent effective presentation of Luna's claim they would be unenforceable. But at this point in the proceedings, without knowing what the particular claims and defenses—and the evidence needed to prove them—will be, discerning the discovery limitations' potential preclusive effect is largely speculative. The assessment of particular discovery needs in a given case and, in turn, the enforceability of limitations thereon, is a determination we believe best suited to the arbitrator as the case unfolds. As with cost-sharing, discovery limitations that prevent vindication of non-waivable rights or "prove insufficient to allow [Luna] a fair opportunity to present [his] claims," *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647, would be unconscionable and thus not binding on the arbitrator, as the agreement in this case specifically acknowledges. At this point in the proceedings, though, we cannot conclude that the evidence presented to the trial court compelled a finding that the discovery limitations were *per se* unconscionable. Thus, the trial court did not abuse its discretion.

### D. Prohibition on Inquiry into "Good Cause"

■■ Luna claims the arbitration provision that prohibits the arbitrator's ability "to apply a 'just cause' or 'good cause' standard to claims relating to Employee's claims concerning his employment or separation therefrom" is substantively unconscionable because it prohibits, in a retaliatory-discharge case, inquiry into whether the employer had a valid, nondiscriminatory reason for firing the employee. Poly–America contends the contract cannot be read as Luna claims, and in fact does not

prevent such an inquiry. We agree with Poly–America, and with the court of appeals, that this prohibition does not operate as Luna asserts; rather, the prohibition simply emphasizes that the contract relates to at-will employment. *See Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998). Thus, the prohibition prevents the arbitrator from substituting a "good cause" requirement for the "at will" standard. The provision does not, however, prohibit inquiry into whether Poly–America improperly terminated Luna in retaliation for his filing of a workers' compensation claim. Because we read the provision merely to articulate an accepted rule of employment contracts, and not to restrict a necessary inquiry into the motivations behind Poly–America's termination of Luna in this case, we agree with the court of appeals that the provision is not unconscionable. *See In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 678 (Tex.2006) (rejecting a claim that an arbitration provision was substantively unconscionable where the challenged provision "effectively incorporate[d] established provisions of contract law").

### E. One–Year Limitations Period

The arbitration agreement includes a clause that requires written notice of a claim to be filed within a maximum of one year from the events giving rise to an arbitrable claim. Luna contends this provision unconscionably shortens the two-year statute of limitations applicable to claims of retaliatory discharge. *See Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 927 (Tex.1996). However, as Luna filed this case well within the one-year period and thus suffered no prejudice

from this provision, it is immaterial to Luna's claims of substantive unconscionability.

### F. Lifetime Application

Finally, Luna argues that the arbitration agreement unconscionably applies even to claims that may arise after Luna's employment with Poly–America has ended and which may have nothing to do with Luna's employment. While we can imagine circumstances that might present a closer question, Luna's claims here concern his employment and termination, the central focus of the agreement. We thus agree with the court of appeals that this provision does not render the arbitration agreement *per se* unconscionable. *See* 175 S.W.3d at 326.

### VI. Severability

 The arbitration agreement in this case contains a severability clause, which provides as follows:

> Should any term of this Agreement be declared illegal, unenforceable, or unconscionable, the remaining terms of the Agreement shall remain in full force and effect. To the extent possible, both Employee and Company desire that the Arbitrator modify the term(s) declared to be illegal, unenforceable, or unconscionable in such a way as to retain the intended meaning of the term(s) as closely as possible.

Poly–America argues that, even if elements of its arbitration agreement with Luna are unconscionable, arbitration is nevertheless required because the unconscionable provisions are severable from the general agreement to arbitrate.[4] Luna

4. The Court received briefs from *amici curiae* the Texas Association of Business and the Society for Human Resource Management Texas State Council, both of which argue that

the court of appeals erred in refusing to sever the provisions it deemed unconscionable from the remainder of the arbitration agreement. The brief submitted by *amicus curiae* the Tex-

contends the unconscionable provisions are integral to the entire contract and are therefore not severable. The court of appeals agreed with Luna, stating that the fee-splitting and remedies-limitation provisions "together deprive Luna of his opportunity to vindicate his claim in the arbitral forum" and concluding that "those provisions are integral to the purpose of the agreement and cannot be severed." 175 S.W.3d at 328. The court of appeals came to this conclusion, it appears, by identifying the fee-splitting and remedies-limitation provisions as weighing in favor of unconscionability "as a whole," but the court did not identify any particular provision that, by itself, would defeat the agreement's purpose. *See id.* at 322, 324. We have determined, however, that the remedies-limitation provisions are individually unconscionable and void, and see no reason why they cannot be easily excised from the contract without defeating its underlying purpose.

An illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement. *See Williams v. Williams,* 569 S.W.2d 867, 871 (Tex.1978); *see also Hoover Slovacek,* 206 S.W.3d at 565 (citing RESTATEMENT (SECOND) OF CONTRACTS § 208 (1981)). Whether or not the invalidity of a particular provision affects the rest of the contract depends upon whether the remaining provisions are independent or mutually dependent promises, which courts determine by looking to the language of the contract itself. *See John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 86 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (citing *Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex.1982)). The relevant inquiry is whether or not parties would have entered into the agreement

absent the unenforceable provisions. *See Patrizi v. McAninch,* 153 Tex. 389, 269 S.W.2d 343, 348 (1954); *see also City of Beaumont v. Int'l Ass'n of Firefighters, Local Union No. 399,* 241 S.W.3d 208, 215 (Tex.App.-Beaumont 2007, no pet.) (citing *Rogers v. Wolfson,* 763 S.W.2d 922, 925 (Tex.App.-Dallas 1989, writ denied)); *Stroman,* 923 S.W.2d at 86 (citing *Frankiewicz v. Nat'l Comp. Assocs.,* 633 S.W.2d 505, 507–08 (Tex.1982)). We have previously allowed severance of illegal contract provisions where the invalid provisions were "only a part of the many reciprocal promises in the agreement" and "did not constitute the main or essential purpose of the agreement." *Williams,* 569 S.W.2d at 871.

The 2002 version of the arbitration agreement in this case is over five pages long and contains numerous provisions not challenged by Luna as imposing any unconscionable burdens: procedures for mediation, selection of a neutral arbitrator, filing of motions, and other general provisions governing arbitration procedures. We agree with Poly–America that the intent of the parties, as expressed by the severability clause, is that unconscionable provisions be excised where possible. Furthermore, it is clear by the contract's terms that the main purpose of the agreement is for the parties to submit their disputes to an arbitral forum rather than proceed in court. *See id.* Excising the unconscionable provisions we have identified will not defeat or undermine this purpose, which we have upheld in the context of agreements to arbitrate employment disputes. *See AdvancePCS,* 172 S.W.3d at 608; *EZ Pawn Corp.,* 934 S.W.2d at 90; *Cantella & Co.,* 924 S.W.2d at 944.

## VII. Conclusion

We hold invalid, as substantively unconscionable and void, provisions of the par-

as Trial Lawyers Association argues that such severance would be improper.

ties' contract that prohibit the award of punitive damages or reinstatement and thus inhibit effective vindication of Luna's retaliatory-discharge claim in an arbitral forum. We further hold that the trial court did not abuse its discretion in allowing the arbitrator to determine whether the fee-splitting agreement and discovery limitations—as applied in the course of arbitration—are unconscionable. Because we find the invalid remedies-limitation provisions severable from the agreement to arbitrate, which we conclude is otherwise enforceable, the trial court did not abuse its discretion in compelling arbitration. Accordingly, we conditionally grant the writ of mandamus.

Justice BRISTER filed a dissenting opinion.

Justice WILLETT did not participate in the decision.

Justice BRISTER, dissenting.

The hard thing about granting mandamus relief is knowing when to stop. This Court has tried over the years to set mandamus boundaries through various tests, all of which soon generated exceptions, and most of which were met with objections

that the "established" boundaries of mandamus were being ignored.

Only two years ago, we held in *In re Palacios* that mandamus review was available for "orders that *deny* arbitration, *but not* orders that *compel* it."[1] We noted that this was a reversal of previous practice,[2] but was necessitated by the Supreme Court's 2000 opinion in *Green Tree Financial Corp. v. Randolph,* which said that orders compelling arbitration "would not be appealable" unless they included final dismissal of the case.[3] Today the Court comes full circle, saying once again that mandamus review of orders compelling arbitration is "proper," though courts should be "hesitant" about it.[4] Apparently, so long as one expresses qualms, *Palacios* is a dead letter.

Of course, firm rules governing mandamus are made to be broken, as issuance of the writ is primarily a matter of judgment and prudence.[5] As the United States Supreme Court said in 2004, mandamus is appropriate if a party shows a clear right, no alternative remedy, and that mandamus is "appropriate under the circumstances."[6] This test (especially the last prong) defies precise application, but years of judicial effort have failed to produce a better one. As a result, reasonable judges will some-

**1.** 221 S.W.3d 564, 566 (Tex.2006) (emphasis added).

**2.** *Id.* at 565 (noting abrogation of *Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994)).

**3.** 531 U.S. 79, 87 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

**4.** 262 S.W.3d 337, 347.

**5.** *See, e.g., CSR Ltd. v. Link,* 925 S.W.2d 591, 597 (Tex.1996) ("Because of the size and complexity of the asbestos litigation, the most *prudent* use of judicial resources in this case is to permit a preliminary resolution of the fundamental issue of personal jurisdiction by writ of mandamus.") (emphasis added); *In re*

*Dean,* 527 F.3d 391, 396 (5th Cir.2008) ("The decision whether to grant mandamus is largely prudential."); *In re Atlantic Pipe Corp.,* 304 F.3d 135, 140 (1st Cir.2002) (concluding mandamus was "prudent under the circumstances"); *In re Chimenti,* 79 F.3d 534, 539 (6th Cir.1996) (noting availability of interlocutory appeal was merely one of several factors affecting court's "prudential considerations" regarding issuance of mandamus).

**6.** *Cheney v. U.S. Dist. Court for Dist. of Columbia,* 542 U.S. 367, 380–81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (holding mandamus should issue when there is (1) no other adequate remedy, (2) a "clear and indisputable" right, and (3) "the writ is appropriate under the circumstances").

times disagree whether mandamus is "prudent" or "appropriate under the circumstances," and sometimes decide differently in one case than the next. But departing from *Palacios* is neither prudent nor appropriate for at least five reasons.

First, Congress amended the Federal Arbitration Act in 1988 so that it "permits immediate appeal of orders *hostile* to arbitration, . . . but bars appeal of interlocutory orders *favorable* to arbitration." [7] Texas law is to the same effect.[8] As the trial court's order here was favorable to arbitration, we should defer to the cost-benefit analysis already conducted by the federal and state legislatures.[9] We cannot simply substitute mandamus when interlocutory appeal is prohibited without running into serious Supremacy Clause problems;[10] "[f]requent pre-arbitration review would inevitably frustrate Congress's intent to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."[11]

Second, the trial court ordered these parties to arbitration five years ago. Had mandamus proceedings not intervened, this dispute would have long since been concluded. Surely the time and expense incurred arbitrating this case would have been less than that incurred in mandamus review. And now that mandamus review is concluded, the parties must go to arbitration anyway. Given our state's strong public policy favoring freedom of contract,[12] claims that a contract is unconscionable are asserted far more often than they are sustained. After today's decision, it is hard to see how any arbitration cannot be stopped in its tracks by alleging unconscionability.

Third, today's opinion is purely advisory; if an arbitrator ignores it, there is little we can do. Both federal and state law require courts to enforce an arbitrator's decision, no matter what it is, with very few exceptions.[13] The allowable exceptions concern extrinsic or procedural matters like corruption, fraud, or refusing to hear evidence;[14] they do not include (as the Supreme Court just held) disregarding the law, even if a legal error is "manifest."[15] What is the benefit of mandamus review if the resulting order can be ignored?

7. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (construing 9 U.S.C. § 16) (emphasis added).

8. *See* TEX. CIV. PRAC. & REM.CODE § 171.098; *In re Palacios*, 221 S.W.3d 564, 566 (Tex.2006).

9. *In re McAllen Med. Ctr., Inc.*, —— S.W.3d ——, ——, 2008 WL 4051053, at *1 (Tex. 2008) ("Although mandamus review is generally a matter within our discretion, our place in a government of separated powers requires us to consider also the priorities of the other branches of Texas government.").

10. *See* U.S. CONST. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

11. *Perry Homes v. Cull*, 258 S.W.3d 580, 599 (Tex.2008) (quoting *Preston v. Ferrer*, —— U.S. ——, ——, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (internal quotations omitted).

12. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex.2008); *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex.2007); *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex.2001).

13. *See* 9 U.S.C. §§ 9–11; TEX. CIV. PRAC. & REM.CODE §§ 171.087–171.088, 171.091.

14. *Id.*

15. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, —— U.S. ——, ——, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008).

Fourth, even if most arbitrators would comply with an appellate court's mandamus rulings, issuing them creates a hybrid procedure unknown to the arbitration acts. As already noted, those statutes commit matters concerning the law and the merits to the arbitrators and foreclose judicial review of the details of the result. This also appears to violate the parties' agreement in this case, which authorized the arbitrator to address unconscionability:

> Should any term of this Agreement be declared illegal, unenforceable, or unconscionable, the remaining terms of the Agreement shall remain in full force and effect. To the extent possible, both Employee and Company desire that the Arbitrator modify the term(s) declared to be illegal, unenforceable, or unconscionable in such a way as to retain the intended meaning of the term(s) as closely as possible.

Telling the arbitrators in advance what legal rulings they should make (as the Court does today) is an improper way to circumvent these restrictions.

Fifth and finally, the Court decides an important question in the abstract that the arbitration may render moot. The Court concedes that unconscionability of the fee-splitting and discovery-limiting clauses should be deferred to the arbitrator. But unconscionability of the remedy-stripping clause is just as fact-based, and just as speculative until all the facts are arbitrated. The fairness of such clauses is not as one-sided as the Court suggests; many

employees might actually *prefer* cash for lost wages (and no appellate delays) rather than reinstatement or a long shot at punitive damages. As the Court notes, several courts have held that such "limitations of remedies are permissible." [16] Twice in 2003 the Supreme Court declined to hold that a remedy-stripping arbitration clause violates the FAA—each time deferring the question until after arbitrators had addressed it. [17] We should do the same here.

We have never held (as the Court holds repeatedly today) that an arbitration agreement is invalid unless an employee can "effectively vindicate his statutory rights." [18] We did not say so in *In re Halliburton Co.* (as the Court's citations aver), where that phrase appears only in a parenthetical describing an opinion by an intermediate appellate court in Michigan, an opinion we neither approved nor adopted. [19] Nor does the Court's judgment comply with this new standard. Despite the remedy limits imposed here, an arbitrator could still award Johnny Luna 50 years of future lost wages, which would certainly seem to "effectively vindicate his statutory rights." Even more than the fee-splitting or discovery-limiting provisions, it is simply too early to tell whether the remedy-stripping provisions will be unfair to Luna at all.

Such an important and controversial question should not be decided in such an offhanded and abstract way. We should instead wait to see whether the arbitration

16. 262 S.W.3d at 352.

17. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406–07, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) (holding that "since we do not know how the arbitrator will construe the remedial limitations" barring treble damages, "the proper course is to compel arbitration"); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 454, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (remanding for arbitrator to determine whether contracts prohibited class arbitration).

18. 262 S.W.3d at 349, 352, 352, & 356.

19. 80 S.W.3d 566, 572 (citing *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 596 N.W.2d 208, 226 (1999)).

award makes such a decision necessary; "if it is not necessary to decide more, it is necessary not to decide more." [20]

The Court overlooks all these problems on the ground that mandamus "has been broadly applied" by federal courts to review orders compelling arbitration.[21] But the string citations that follow do not support that claim. Of the five cases cited, three predated *Green Tree*,[22] and a fourth did not involve a trial court order favorable to arbitration.[23] The single case granting mandamus relief from an order favorable

to arbitration was by the Ninth Circuit, the court widely recognized as the "most hostile," [24] "far to the left of center," [25] and "renegade" court in the country in employment arbitration cases.[26] Even so, mandamus was granted in that case only because arbitrating the single class representative's case could moot the class action he had brought, wiping it out without appellate review.[27] In short, there is no "broad" consensus for doing precisely the opposite of what Congress and the Texas Legislature intended.

---

**20.** *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring).

**21.** 262 S.W.3d at 346.

**22.** *Georgiou v. Mobil Exploration & Prod. Servs., Inc. US*, 190 F.3d 538 (5th Cir.1999); *Cofab Inc. v. Phil. Joint Bd., Amalgamated Clothing & Textile Workers Union*, 141 F.3d 105 (3d Cir.1998); *McDermott Intern., Inc. v. Underwriters at Lloyds Subscribing to Memorandum of Ins. No. 104207*, 981 F.2d 744 (5th Cir.1993).

**23.** *Manion v. Nagin*, 255 F.3d 535, 540 (8th Cir.2001) (involving injunction to obtain salary payments pending arbitration); *see also Cofab*, 141 F.3d at 110 (involving temporary stay of motion to enforce arbitration award pending NLRB review of related matter).

**24.** *See* Adam Borstein, *Arbitrary Enforcement: When Arbitration Agreements Contain Unlawful Provisions*, 39 Loy. L.A.L.Rev. 1259, 1275 (2006) ("This combination of finding unconscionability and favoring public policy over enforcement of the FAA has made the Ninth Circuit more hostile towards unlawful arbitration provisions than any other federal circuit."); Michael G. McGuinness & Adam J. Karr, *California's "Unique" Approach to Arbitration: Why This Road Less Traveled Will Make All the Difference on the Issue of Preemption Under the Federal Arbitration Act*, 2005 J. Disp. Resol. 61, 91–92 (2005)("[T]he conclusion that California courts—and the Ninth Circuit—are imposing their own biases against arbitration is inescapable."); Steven M. Warshawsky, *Gilmer, the Contractual Exhaustion Doctrine, and Federal Statutory Employment Discrimination Claims*, 19 Lab. Law. 285, 303 n. 180 (2004) ("The Ninth Circuit continues to be hostile to mandatory arbitration agreements."); Dennis R. Nolan, *Employment Arbitration After Circuit City*, 41 Brandeis L.J. 853, 890 (2003) ("[D]espite Congress's broad endorsement of arbitration in the FAA and the Supreme Court's repeated confirmation of that policy, many judges (not all of them on the Ninth Circuit) remain deeply skeptical if not openly hostile."); *Hai Jiang, Do We Allow Contract Law to Administer Civil Rights Remedies? Casenote on Haskins v. Prudential Insurance Co.*, 2003 L.Rev. Mich. St. U. Det. C.L. 251, 260 (2003) ("The Ninth Circuit is the most hostile to arbitration of employment discrimination claims among the circuit courts....").

**25.** *See* Earl Greene III, Note, *Armendariz v. Foundation Health Psychcare Services, Inc.: The California Supreme Court Searches For a Middle Ground*, 1 J. Am. Arb. 105, 108–09 (2001) ("On a mandatory arbitration agreement enforcement continuum, the Ninth Circuit would be sitting far to the left of center as it seems to be more concerned with protecting the statutory rights of employees than toeing the line with the Supreme Court.")

**26.** *See* Jennifer LaFond, Notes, *The Private Enforcement of Public Laws in Armendariz v. Foundation Health Psychcare Servs.*, 29 Pepp. L.Rev. 401, 414 n. 127 (2002) ("The Ninth Circuit is the renegade circuit with respect to ... [whether] employees can be compelled to arbitrate statutory claims.").

**27.** *Douglas v. U.S. Dist. Court*, 495 F.3d 1062, 1068–69 (9th Cir.2007).

It is certainly true that leaving matters like unconscionability to arbitrators will mean development of the law is "substantially hindered,"[28] but the same could be said of arbitration in *all* cases. It is hard to see the allure of a system in which decision-makers can ignore the law, unless of course one is planning to ignore the law oneself. Based on its popularity, few arbitrators apparently go that far. But even carefully selected judges and jurors make mistakes, and carefully selected arbitrators are surely no less fallible. Nevertheless, these are policy matters that only Congress can address or amend; we cannot disregard the express legislative limits on interlocutory review merely by calling it mandamus when we think the questions are important and the issues well-briefed.

While appeal from arbitration awards is very limited, that appeal is an adequate remedy unless the benefits of mandamus outweigh the costs.[29] Considering the costs expended so far, I doubt Johnny Luna would consider them outweighed by getting the right to seek reinstatement in arbitration (which employees rarely request) and punitive damages (which they rarely get). Accordingly, I agree with the Court that the court of appeals erred in reviewing and reversing the trial court's order compelling arbitration. But I disagree that we have any place reviewing those matters either. To that extent, I respectfully dissent.

---

28. 262 S.W.3d at 346.

29. *In re BP Products N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex.2008); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.2004).