

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00435-CV

D.R. HORTON-TEXAS, LTD.                                    APPELLANT

V.

ELIZABETH DROGSETH                                         APPELLEE

----------

### FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION AND BACKGROUND

This is an interlocutory appeal from the trial court's order denying Appellant D.R. Horton-Texas, Ltd.'s motion to compel arbitration. D.R. Horton and Appellee Elizabeth Drogseth entered into a two-page contract of sale for real property. The contract contained an arbitration agreement. D.R. Horton conveyed the real property to Drogseth, and she later filed suit against D.R.

---

[1]See Tex. R. App. P. 47.4.

Horton based on alleged defects in a retaining wall on the property. She alleged causes of action for negligence and breach of warranties. D.R. Horton filed a plea in abatement and original answer, requesting that the trial court abate the case and submit it to binding arbitration pursuant to the contract's arbitration clause. D.R. Horton then filed a motion to compel arbitration. After a hearing on the motion, the trial court denied it. D.R. Horton filed this interlocutory appeal, arguing in a single issue that the trial court abused its discretion by denying the motion to compel arbitration. We will reverse and remand.

## II. THE LAW ON ARBITRATION AGREEMENTS AND STANDARD OF REVIEW

Procedurally, a party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and to show that the to-be-arbitrated claims fall within the arbitration agreement's scope. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding), *abrogated in part on other grounds by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding), *cert. denied*, 537 U.S. 1112 (2003); *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 701 (Tex. App.—Fort Worth 2006, pet. denied). In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding). Any doubts about whether claims fall within the scope of the arbitration agreement must be resolved in favor of

2

arbitration. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). If a party establishes that a valid arbitration agreement exists and that the scope of the agreement includes the claims asserted, the burden shifts to the party opposing arbitration to prove any alleged defenses to arbitration. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding).

We review the trial court's denial of a motion to compel arbitration for an abuse of discretion. *See In re Labatt Food Svc., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (explaining standards of review for arbitration appeals). Under this standard, we defer to the trial court's factual determinations that are supported by the record and review legal questions de novo. *Labatt Food Svc., L.P.*, 279 S.W.3d at 643.

### III. FAILURE TO COMPEL BINDING ARBITRATION WAS ABUSE OF DISCRETION

In its sole issue, D.R. Horton argues that the trial court abused its discretion by refusing to compel arbitration because Drogseth's claims are covered by a valid arbitration agreement, because D.R. Horton did not waive its right to arbitration, and because none of Drogseth's remaining arguments in opposition to arbitration prevent enforcement of the agreement.[2]

---

[2]Whether the federal or the state arbitration act or both apply is not at issue in this appeal, nor does it affect our analysis or jurisdiction. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (noting that state contract law applies when determining validity of arbitration agreements); *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 644 (Tex.

3

## A. D.R. Horton Met Initial Burden

In support of its motion to compel arbitration, D.R. Horton produced a signed copy of the contract. The contract consists of two pages, printed on the front and back of a single page. The front page contains paragraphs 1 through 11 and includes the executed signature lines for both Drogseth and D.R. Horton. Just above the executed signature lines, the contract states, "**PARAGRAPHS 12 THROUGH 26 ON THE REVERSE SIDE CONSTITUTE A PART OF THIS CONTRACT.**" The back page contains the following arbitration provision:

> 13. **DISPUTE RESOLUTION.** If a dispute arises out of or relating to this Agreement or a breach thereof and if the dispute cannot be settled through negotiation, Buyer and Seller agree to first try in good faith to settle the dispute by mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Rules, before resorting to arbitration, litigation, or another dispute resolution procedure. If mediation fails, any claim, controversy or dispute of any kind between Buyer and Seller, whether arising from a tort, the Contract, any breach of the Contract in any way related to this transaction, including but not limited to claims or disputes arising under the Deceptive Trade Practices Consumer Protection Act, Texas Business & Commerce Code, Section 17.41, et seq., and/or the terms of the express limited warranty referenced in paragraph 12 of the Contract, **THE BUYER AND SELLER AGREE TO RESOLVE SUCH DISPUTE BY BINDING ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION ACT AND THE FEDERAL ARBITRATION ACT** under the direction and procedures established by the AAA "Construction Industry Arbitration Rules" except as specifically modified herein or dictated by applicable statutes including the Texas General Arbitration Act and/or the Federal Arbitration Act. If Buyer does not seek arbitration prior to initiating any legal action, Buyer agrees that Seller shall be entitled to liquidated damages in

App.—Dallas 2010, no pet.) (noting that standard for determining waiver is the same under state and federal law).

4

the amount of Ten Thousand Dollars ($10,000.00). Any dispute arising from the Contract shall be submitted for determination by a board of three (3) arbitrators to be selected for each such controversy. The decision of the arbitrators shall be in writing and signed by such arbitrators, or majority of them, and shall be final and binding upon the parties. Each party shall bear the fees and expenses of counsel, witnesses, and employees of such party, and any other costs and expenses incurred for the benefit of such party. All other fees and expenses shall be divided equally between Buyer and Seller.

Paragraph 26 on the back page of the contract states that the parties "agree that the provisions of paragraphs 11, 12, 13 [the arbitration provision], 17, 18, 20, 21, 22, 23, and 24 of this Contract, and this Paragraph 26 shall survive closing and delivery of the deed to Buyer . . . ."

The arbitration agreement is broad, covering "any claim, controversy or dispute of any kind" between Drogseth and D. R. Horton, "whether arising from a tort, the Contract, [or] any breach of the Contract in any way related to this transaction." Drogseth's claims regarding alleged defects in a retaining wall on the property sold pursuant to the contract fall within the scope of the arbitration clause; they relate directly to the sale of the property. *See Prudential Sec. Inc.*, 909 S.W.2d at 899; *Jack B. Anglin Co.*, 842 S.W.2d at 271.

Because D.R. Horton established the existence of an arbitration agreement and that Drogseth's claims fell within the scope of that agreement, we turn to Drogseth's alleged defenses to enforceability of the arbitration agreement,

5

which she bore the burden to prove.[3] *See AdvancePCS Health, L.P.*, 172 S.W.3d at 607.

## B. Drogseth's Unconscionability Arguments Fail

Drogseth argued at trial and asserts on appeal that the arbitration agreement is unconscionable on numerous grounds. Arbitration agreements are not inherently unconscionable. *Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding); *Palm Harbor Homes, Inc.*, 195 S.W.3d at 678. Unconscionable contracts, however—whether relating to arbitration or not—are unenforceable under Texas law. *Poly-Am., L.P.*, 262 S.W.3d at 348.

Unconscionability may be either procedural or substantive in nature. *Halliburton Co.*, 80 S.W.3d at 571. Procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision and relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process. *Id.*; *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (op. on reh'g). Substantive unconscionability concerns the fairness of the arbitration provision itself. *Halliburton Co.*, 80 S.W.3d at 571. A contract is substantively unconscionable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is

---

[3]Drogseth does not dispute that her claims against D.R. Horton are within the scope of the agreement; she claims, however, that the arbitration clause was unenforceable for several reasons that we will address.

unconscionable under the circumstances existing when the parties made the contract." *Poly-Am., L.P.*, 262 S.W.3d at 348 (quoting *In re FirstMerit Bank*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding)); *see also Halliburton Co.*, 80 S.W.3d at 571.

Whether a contract is unconscionable at the time it is formed is a question of law. *Poly-Am., L.P.*, 262 S.W.3d at 348. Because a trial court has no discretion to determine what the law is or to apply the law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion. *Id.*

Drogseth argues that D.R. Horton did not point out to her the arbitration clause on the back of the contract, that the clause was not conspicuously printed in all capital letters, that the signature line was on the first page while the arbitration clause was on the back, and that she was only provided a copy of the front page of the contract.[4] But courts have consistently rejected these types of arguments; Texas law presumes that a party who signs a contract has read it and knows its contents. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (rejecting argument that arbitration clause on back of single-sheet contract was unenforceable and noting that "a party cannot avoid an arbitration clause by simply failing to read it"); *EZ Pawn Corp. v. Mancias*, 934

---

[4]Drogseth submitted her own affidavit to support her claims. D.R. Horton objected to the admissibility of that affidavit. We need not address the admissibility of the affidavit on appeal because, even considering it, Drogseth's claimed defenses to arbitration fail. *See* Tex. R. App. P. 47.1.

7

S.W.2d 87, 90 (Tex. 1996) (orig. proceeding) (noting that failure to read agreement does not excuse a party from arbitration and that unequal bargaining power between the parties is not a ground for defeating an agreement); *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) ("The agreement is a single page with text on both sides. Nothing is 'hidden' on the back side of the document."); *In re Orkin Exterminating Co., Inc.*, No. 01-01-00035-CV, 2001 WL 871738, at *1 (Tex. App.—Houston [1st Dist.] Aug. 2, 2001, orig. proceeding) (holding arbitration clause conspicuous when on back of two-page contract, front page referenced back of page, and arbitration clause in separately-numbered paragraph with heading in bold, capital letters).

Drogseth next argues that the arbitration agreement was unenforceable because it omitted the material term of cost of the arbitration; she cites no authority for this proposition, and we find none. As D.R. Horton points out on appeal, the cost of arbitration varies depending on the case, and when a party contests arbitration due to substantial expense, that party bears the burden of proving the likelihood of incurring such costs and must provide some specific information concerning those future costs. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex.) (orig. proceeding) (citing *FirstMerit Bank*, 52 S.W.3d at 756), *cert. denied*, 131 S. Ct. 319 (2010). Drogseth has not met that burden.[5]

---

[5]Drogseth asks that we take judicial notice of the "significant cost of a panel of three arbitrators at the AAA as being an extremely costly endeavor, one which the average homeowner would have no clue as to the cost," but this is not a fact "not subject to reasonable dispute." *See* Tex. R. Evid. 201(b) (providing for

Drogseth also argues that the arbitration clause's inclusion of a $10,000 penalty for failing to seek arbitration is unconscionable, but D.R. Horton informed the trial court at the hearing on its motion to compel arbitration that it was not seeking to enforce that provision and affirmatively waived any right to do so. Furthermore, assuming this provision is unconscionable, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Poly-Am., L.P.*, 262 S.W.3d at 360. If the language of the contract itself demonstrates that the illegal provision is independent of the remaining provisions, then the invalidity of a particular provision does not affect the rest of the contract. *Id.* The relevant inquiry is whether parties would have entered into the agreement absent the unenforceable provisions. *Id.*

As in *Poly-Am*, it is clear that the main purpose of the arbitration clause in the contract here is for the parties to submit their disputes to arbitration rather than pursue litigation. *See id.* And also as in *Poly-Am*, the contract in this case contains a severability clause, demonstrating the parties' intent to sever

---

judicial notice of facts "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 774 (Tex. App.—Beaumont 1992, writ denied) (declining to judicially notice that cities of Beaumont, Port Arthur, and Orange, Texas, are in the same metropolitan area and noting that the location of cities, on the other hand, could be judicially noticed as easily ascertainable and capable of verifiable certainty).

unconscionable or illegal provisions from the contract.[6]  *See id.* at 359–360. Thus, even if D.R. Horton had not waived enforcement of the $10,000 penalty and if we assumed that the penalty provision is unconscionable, it could be severed from the arbitration agreement without defeating the agreement's underlying purpose.  *See id.* at 360.

Drogseth did not meet her burden of establishing either procedural or substantive unconscionability of the arbitration agreement.

## C. D.R. Horton Did Not Waive Its Right to Arbitrate

Drogseth additionally asserts that D.R. Horton waived its right to arbitrate by filing a third-party petition against a non-party to the arbitration agreement.  At the hearing on D.R. Horton's motion to compel arbitration, the trial court also questioned whether D.R. Horton's filing a third-party action constituted waiver.[7]

A party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice.  *See Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008), *cert. denied*, 555 U.S. 1103 (2009).  The party opposing arbitration has the burden to raise and prove the waiver defense, and due to the strong presumption against waiver of arbitration, this hurdle is a high one.  *Id.* at 590.  Waiver must be decided on a case-by-case basis, but it is

---

[6]The severability clause states, "The unenforceability or invalidity of any provision of the Contract shall not affect the enforceability or validity of any other provision of the Contract."

[7]The trial court did not state its reasons for denying D.R. Horton's motion to compel arbitration either at the hearing or in its written order.

clear that parties who "conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial" waive any contractual right to arbitration. *Id.*; *see In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (orig. proceeding). Whether a party has waived arbitration by litigation conduct is a question of law, which we review de novo. *See Cull*, 258 S.W.3d at 587.

Here, after Drogseth filed suit, D.R. Horton filed a "Plea in Abatement and Original Answer," requesting that the trial court abate the case and submit it to binding arbitration pursuant to the contract's arbitration clause. Approximately six weeks later, D.R. Horton filed its motion to compel arbitration. Almost two months later, and prior to a hearing on the motion to compel, D.R. Horton filed a third-party petition against Southgate Phase II Development, LP and J.J. Global Investments, LLC. In the third-party petition, D.R. Horton stated that it had filed a motion to compel arbitration of Drogseth's claims and that the third-party petition was not meant to waive the right to arbitrate the claims asserted by Drogseth; D.R. Horton stated that it was filing the third-party claim "only to protect the claims that D.R. Horton has against the Third-Party Defendants." D.R. Horton also filed a response and objection to the trial court's setting the case for trial; in that pleading, D.R. Horton reiterated its belief that the case should be referred to binding arbitration. The trial court held a hearing on D.R. Horton's motion to compel arbitration five months later and subsequently denied the motion.

Considering the totality of the circumstances, we fail to see how D.R. Horton substantially invoked the judicial process such that it waived its right to compel arbitration. D.R. Horton included a demand for arbitration in its original answer. *See In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 901 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) ("The burden of demonstrating waiver 'falls even more heavily' when, as here, the party seeking arbitration included a demand for arbitration in its original answer."). The fact that D.R. Horton filed a third-party petition and asserted within that motion that it did not intend to waive its right to arbitration was not an act inconsistent with the assertion of the right to compel arbitration. *See, e.g., In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 479 (Tex. App.—Corpus Christi 2007, no pet.) (noting that "purely defensive measures do not substantially invoke the judicial process" and that the filing of a third-party petition, alone, would not establish waiver); *cf. Cull*, 258 S.W.3d at 589–90 (listing supreme court opinions finding no waiver based on a party's: filing suit; sending 18 interrogatories and 19 requests for production; or seeking initial discovery, taking four depositions, and moving to dismiss based on standing). D.R. Horton again asserted its right to arbitration in its objection to a trial setting, showing its intent to avoid, rather than participate in, the judicial process. *See In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding). Finally, the fact that the trial court did not hold a hearing on D.R. Horton's motion to compel for five months after it filed the motion (and eight months after Drogseth filed suit) is not demonstrative of

12

whether D.R. Horton substantially invoked the judicial process to Drogseth's detriment, and the delay of six weeks between Drogseth's filing suit and D.R. Horton's moving to compel arbitration does not establish waiver. *See Vesta Ins. Group, Inc.*, 192 S.W.3d at 763 ("Delay alone generally does not establish waiver."). D.R. Horton did not waive its right to arbitrate.

Having determined that D.R. Horton met its initial burden to establish the existence of an arbitration agreement and that Drogseth did not meet her burden of establishing her alleged defenses to enforceability, we hold that the trial court abused its discretion by denying D.R. Horton's motion to compel arbitration and sustain D.R. Horton's sole issue.

## IV. CONCLUSION

Having sustained D.R. Horton's sole issue, we reverse the trial court's order denying D.R. Horton's motion to compel arbitration and remand this case to the trial court for further proceedings consistent with this opinion.

SUE WALKER
JUSTICE

PANEL: GARDNER and WALKER, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: July 3, 2013

13