**Affirmed and Memorandum Opinion filed July 14, 2016.**



In the

# Fourteenth Court of Appeals

### NO. 14-14-00808-CV

## IN THE MATTER OF THE MARRIAGE OF STEVEN W. ARD AND MARSHA ARD-PHILLIPS

**On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 2006-47105**

## M E M O R A N D U M   O P I N I O N

Marsha Ard-Phillips appeals from a final decree of divorce dissolving her marriage to Steven W. Ard. Marsha complains that the trial court erred: (1) in determining that the attorney's fee provision of the couple's post-nuptial agreement was unconscionable, (2) in permitting the intervention of one of Marsha's previous divorce attorneys, (3) in determining reimbursement claims, (4) in dividing the marital estate, and (5) in sustaining the contests to Marsha's affidavit of indigence. Marsha also invokes Federal Rules of Civil Procedure 52(a) and 60(b)(6) for relief. Because none of Marsha's contentions presents reversible error that materially affects the trial court's determination, we affirm the divorce decree.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Marsha and Steven married in July 1995. In July 1997, they entered into a post-nuptial agreement (PNA). The PNA was premised on Steven's admission that he had made false statements about not having any sexual diseases or problems. Under the PNA, Steven agreed to various payments, partitions, or exchanges of property as damages for Marsha's injuries.[1]

Despite the parties' attempts at counseling and various treatment methods to address their sexual issues, Marsha filed for divorce in 2001. The case went to jury trial in 2003. During the trial, the parties agreed to attempt reconciliation and the case was nonsuited.

Steven filed for divorce in 2006. The case was bifurcated into two parts—enforceability of the PNA and property division. Enforceability was tried to a jury in July 2009.[2] Both Steven and Marsha moved for summary judgment as to the enforceability of the PNA. The trial court denied both motions. Before the case went to the jury, the trial court issued its legal ruling regarding the unconscionability of the PNA:

> [T]he agreement is in part conscionable and in part unconscionable. The part that is unconscionable is all of the actual contractual provisions that

---

[1] In part I, sections A.1 through 8, Steven agreed that various items of community property tied to the two-year period from July 1995 to July 1997 would be Marsha's separate property. In part II, sections B.1 through 6, Steven agreed that Marsha would receive one-half of various items of his separate property and one-half of his earned income. In part III, which only applied in the event they remained married through Steven's death, he agreed that Marsha would receive various property as her sole property and as sole beneficiary. Steven also agreed that he would not make a contrary will, and that he would pay reasonable attorney's to Marsha's counsel or to Marsha herself if she enforced the PNA.

[2] *See* Tex. Fam. Code Ann. § 4.006(a) (West 2006) (marital property agreement not enforceable if either (1) party did not sign it voluntarily or (2) agreement was unconscionable when signed and, before signing, party was not provided fair and reasonable disclosure of property or financial obligations of other party, did not waive right to disclosure, and did not have adequate knowledge of other party's property and financial obligations).

are in Part II under categories—Sections B-1 through 6. And also on Part III, all of C-1 through 7, as well as the other contractual provisions that are contained on Page 5 and 6 that may or may not be a part of Part III. And I'm finding that the section on Part I, A[-1] through . . . 8 are conscionable.[3]

The jury was instructed that a partition or exchange agreement is not enforceable if the party resisting enforcement did not voluntarily sign it. The jury returned an answer of enforceable. The jury was further instructed that a partition or exchange agreement is also not enforceable if the party resisting enforcement was not provided a fair and reasonable disclosure of the other party's property or financial obligations, the party did not voluntarily and expressly waive in writing any right to those disclosures, and the party did not have and reasonably could not have had adequate knowledge of the other party's property or financial obligations. The jury returned an answer of not enforceable. As a result of the jury's verdict, Marsha could only enforce the conscionable portion of the PNA—part I, sections A.1 through 8—in which Steven agreed that Marsha was entitled to certain payments, partitions, or exchanges as her sole property as compensation for some of her injuries. The property division portion of the trial was to continue before the court.

In September 2009, Marsha's trial counsel withdrew and filed a petition in intervention seeking attorney's fees. Marsha moved to strike such intervention. In October 2009, Marsha filed for Chapter 7 bankruptcy, staying the divorce proceedings.

In July 2014, the trial continued. The trial court filed findings of fact and conclusions of law on August 14, 2014, including an exhibit regarding the court's division of property. The trial court signed a final decree of divorce on August 29, 2014. Marsha filed a request for findings of fact and conclusions of law on

---

[3] *See id.* § 4.006(b) (court decides unconscionability as matter of law).

September 22, 2014. The trial court denied her request as moot and untimely if considered a request for findings of fact and conclusions of law, *see* Tex. R. Civ. P. 296 (must file within 20 days of judgment), or untimely if considered a request for additional or amended findings and conclusions, *see id.* 298 (must file within 10 days of findings and conclusions). Marsha also filed a motion to modify, correct, or reform the judgment. The record does not reflect that the trial court heard or ruled on this motion.

Marsha filed her notice of appeal. Marsha claimed that she was unable to pay for the appellate record and requested that Steven pay the costs. The Harris County District Clerk, the court reporter, and Steven opposed Marsha's affidavit of indigence. The trial court sustained the contests to Marsha's affidavit and denied her request that Steven pay for the record.

## II. ANALYSIS

To begin, we address Steven's argument that Marsha waived every issue due to briefing waiver. *See* Tex. R. App. P. 38.1(i). Steven contends that Marsha's "brief has numerous contentions throughout, is very difficult to follow, does not refer to citations in the record and lacks citations to authorities."

Although this court is obliged to construe the rules of appellate procedure "reasonably yet liberally," *see Republic Underwriters Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004) (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997)), we also may not apply a different set of rules to pro se litigants like Marsha, *see Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978). Marsha outlines seven issues in her "issues presented for review per TRAP 38(1)(f)" and includes an "argument and authori[tie]s" section that does cite to the record and legal authorities. Accordingly, we do not adopt Steven's position that Marsha's briefing is wholly inadequate. However, liberally construing Marsha's issues, we

4

note numerous, oftentimes wide, gaps in her analysis. We address Marsha's issues, keeping in mind that we have "no duty, or even the right, to perform an independent review of the record and applicable law to determine whether there was error." *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

## A. Unconscionability of the attorney's fee provision of the PNA[4]

In her first issue, Marsha argues that the trial court erred with regard to its ruling that the attorney's fee provision of the PNA was unconscionable as a matter of law. According to Marsha, the trial court erred by severing the unconscionable attorney's fee provision from the enforceable portion of the PNA (part I).

The attorney's fee provision states:

In the event Marsha Ard-Phillips needs to retain counsel to enforce this contract, [Steven Ard] agree[s] to pay reasonable attorney's fees for the enforcement of this contract. . . . In the event Marsha Ard-Phillips (a licensed attorney) chooses to enforce this contract herself, [Steven Ard] agree[s] to pay her reasonable attorney's fees for the enforcement of this PostNuptial Contract.

In part I, sections A.1 through 8, of the PNA, Steven agreed that certain items would be Marsha's sole property in an attempt to compensate her for some of her injuries. Marsha's sole property was to include:

(A.1) all equity in their Bellaire house up to July 21, 1997;

(A.2) monetary contributions and growth thereof in Steven's Texaco 401(k) and in Marsha's City of Houston deferred compensation plan from July 21, 1995 to July 21, 1997;

(A.3) accumulated home furnishings to July 21, 1997;

(A.4) monetary contributions and growth to any of Steven's and Marsha's annuities or IRAs during the past two years to July 21,

---

[4] This provision was included on page 6 of the PNA.

5

1997;

(A.5) the full value accumulating in Steven's regular Texaco retirement plan from July 21, 1995 to July 21, 1997; and

(A.6) the full value accumulating in Marsha's Plan A or B of her City of Houston retirement plan from July 21, 1995 to July 21, 1997.

Also, under part I: (A.7) Steven has no interest in Marsha's 1995 Honda and Marsha has no interest in Steven's 1993 Pontiac; and (A.8) if they divorced, Steven has sole responsibility for the loan against his Texaco 401(k) taken out for the down payment on their Bellaire house.

Generally, courts may sever an illegal or unconscionable portion of a contract as long as it does not constitute the essential purpose of the agreement. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 360 (Tex. 2008). Marsha contends that she "wouldn't have agreed to a PNA without an enforcement clause." We conclude, however, that the attorney's fee provision was severable. Marsha's cited cases—*In re Poly-America*, 262 S.W.3d at 360, and *Patrizi v. McAnich*, 269 S.W.2d 343, 348 (Tex. 1954)—support the trial court's severance. Like in *In re Poly-America*, which upheld the severability of unconscionable portions of an arbitration agreement, Marsha and Steven could have entered part I of the PNA without the attorney's fee provision because they were not mutually dependent promises. 262 S.W.3d at 360. Excising the unconscionable attorney's fee provision would not defeat or undermine the essential purpose of part I of the PNA, Steven's waiver of certain property rights as compensation for Marsha's damages. *See id.* Regardless of any unconscionable fee agreement, Marsha was free to seek legal redress to enforce part I. And unlike in *Patrizi*, where the very face of the contract reflected that the illegal provisions "were a vital part thereof," *see* 269 S.W.2d at 347–48, the PNA here contains a severability clause expressing the parties' intent that if any provision of the PNA is not valid, such invalidity does not affect other provisions which can be given effect without the

invalid provision. *See In re Poly-Am.*, 262 S.W.3d at 360 (severability clause supported excision of unconscionable provisions).

We next consider the trial court's underlying legal determination that the attorney's fee provision was unconscionable.[5] The term "unconscionable" carries no precise legal definition. *Arthur's Garage, Inc. v. Racal–Chubb Sec. Sys.*, 997 S.W.2d 803, 815 (Tex. App.—Dallas 1999, no pet.); *Marsh v. Marsh*, 949 S.W.2d 734, 739–40 (Tex. App.—Houston [14th Dist.] 1997, no writ). In general, the term "unconscionable" describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms. *Arthur's Garage*, 997 S.W.2d at 815. Proof of unconscionability considers two broad questions: (1) the procedural aspect of how the parties arrived at the terms in controversy and (2) the substantive aspect of whether legitimate commercial reasons justify inclusion of the terms. *See id.* at 815–16.

Unconscionability is ultimately a legal question to be determined in light of a variety of factors and on a case-by-case basis. *See In re Poly-Am.*, 262 S.W.3d at 348. Because this determination is dependent on the existence of facts that allegedly illustrate unconscionability, we do not disturb facts impliedly found by the trial court as long as they are supported by the record. *See Besteman v. Pitcock*, 272 S.W.3d 777, 788 (Tex. App.—Texarkana 2008, no pet.). The unconscionability of a marital property agreement depends on various considerations, such as the maturity and age of the individuals, their business backgrounds, their educational levels, their prior marriages, and other motivations. *See Marsh*, 949 S.W.2d at 741; *Williams v. Williams*, 720 S.W.2d 246, 249 (Tex. App.—Houston [14th Dist.] 1986, no writ).

At the time of the PNA, Marsha was a trained and licensed attorney, working

---

[5] Although the trial court determined that several provisions of the PNA were unconscionable, Marsha only specifically challenges the attorney's fee provision on appeal.

in business litigation for the City of Houston. Steven had a bachelor's degree in computer science and was working in IT for Texaco. Marsha had been married and divorced three previous times. Steven had been married and divorced once before, and had no experience with a post-nuptial agreement. Although Steven had been working to address his alleged sexual performance issues through counseling and medical treatment, Marsha threatened divorce. In addition, Marsha threatened that she would ensure "everybody" knew about Steven's secret sexual proclivities and sexual problems, and that she would sue him. Marsha drafted the PNA and pressured Steven to sign it because she indicated she was approaching the statute of limitations for fraud. Steven felt that he did not have sufficient time to have an attorney review the PNA. Steven indicated that he would do "anything" to avoid a divorce and he felt that he "had no choice." Steven was "totally devastated" because Marsha no longer wanted to be married to him and was taking antidepressant medication when he signed the PNA. Moreover, the substance of the attorney's fee provision—Steven agreed to pay attorney's fees directly to Marsha if she decided to choose herself to enforce the agreement that she drafted—reflects its extremely one-sided nature.

Under the circumstances of this case, we conclude that the trial court did not err in its finding of unconscionability as to the attorney's fee provision of the PNA. *See Sheriff v. Moosa*, No. 05-13-01143-CV, 2015 WL 4736564, at *4 (Tex. App.—Dallas Aug. 11, 2015, no pet.) (concluding based on record that trial court did not err in refusing to enforce unconscionable prenuptial agreement) (mem. op.).

We overrule Marsha's first issue.

## B. Intervention

Next, Marsha contends that the trial court erred by permitting Marsha's former

8

trial counsel's intervention despite Marsha's motion to strike.[6]

Texas Rule of Civil Procedure 60 provides that any party may intervene by filing a pleading, subject to being stricken out by the trial court for sufficient cause on any party's motion. Tex. R. Civ. P. 60. An intervenor is not required to secure the court's permission to intervene. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). Under rule 60, a person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof. *Id.* The rule authorizes a party with a justiciable interest in a pending suit to intervene in the suit as a matter of right. *Id.* The asserted interest may be legal or equitable. *Id.* The trial court has "broad discretion" in determining whether an intervention should be stricken. *Id.*

Our review of the record reveals Marsha's former trial counsel alleged that Marsha hired her to provide legal services in her pending divorce, counsel provided those services, Marsha accepted those services and became bound to pay counsel's reasonable and necessary fees under their contract, counsel demanded that Marsha pay the outstanding balance, and Marsha did not pay it. Marsha's former trial counsel pleaded alternative claims for a suit on sworn account and quantum meruit. Because this intervention comports with rule 60, we conclude that the trial court did not abuse its broad discretion in permitting the intervention.

Next, Marsha argues that the trial court erred by refusing to void a rule 11 agreement entered into between her former trial counsel and Steven. However,

---

[6] We note that Marsha incorrectly contends that the intervention was required to meet what she asserts is a three-prong test. Marsha does not present, and we have not located, any authority for such a test. The Texas Supreme Court has mentioned similar factors in the context of determining whether a trial court abused its discretion by sua sponte striking an intervention. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657–58 (Tex. 1990). Since the trial court did not strike the intervention, the factors from *Guaranty Federal* do not apply.

9

Marsha does not cite to the record or to any legal authority to support this assertion. We conclude that Marsha has waived this subissue. *See* Tex. R. App. P. 38.1(i); *Cantu v. Maher*, No. 14-07-00584-CV, 2009 WL 2589253, at *3 (Tex. App.— Houston [14th Dist.] Aug. 25, 2009, pet. struck) (mem. op.) ("[A]n issue not supported by authority is waived."); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (finding waiver where appellants did not cite to any part of the record).

It is not clear how Marsha's next argument that Steven could have filed his own motion to strike the intervention challenges any particular action or ruling by the trial court. Finally, we also fail to grasp how Marsha's contention that the bankruptcy court erroneously allowed Steven to file a proof of claim reflects any error by the trial court here.

We overrule Marsha's second issue.

## C. Property division issues

### 1. Standard of review

Section 7.001 of the Texas Family Code provides that the trial court must divide community property in a "just and right" manner, having "due regard for the rights of each party." *See* Tex. Fam. Code Ann. § 7.001 (West 2006). A trial court may exercise wide discretion in ordering a property division. *See Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App—Houston [14th Dist.] 1996, no writ) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981)). "Equal division of property is not required, but the division must be equitable." *Marin v. Marin*, No. 14-13-00749-CV, 2016 WL 1237847, at *2 (Tex. App.—Houston [14th Dist.] Mar. 29, 2016, no pet.) (mem. op.); *see Murff*, 615 S.W.2d at 698–99 & n.1; *Nowzaradan v. Nowzaradan*, No. 01-05-00094-CV, 2007 WL 441709, at *6 (Tex. App.—Houston [1st Dist.] Feb.

10

8, 2007, no pet.) (mem. op.) ("Well-settled law, however, recognizes that community property need not be equally divided.").

Under the abuse-of-discretion standard, sufficiency of the evidence, whether legal or factual, is a relevant factor in assessing the trial court's discretion. *See Marriage of O'Brien*, 436 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *In re T.J.L.*, 97 S.W.3d 257, 266 (Tex. App—Houston [14th Dist.] 2002, no pet.)). To prevail on a complaint about property division, an appellant bears the burden to demonstrate, based on the evidence in the record, that the division was so unjust and unfair as to constitute an abuse of discretion. *See id.*

We review the trial court's findings of fact for legal sufficiency of the evidence by the same standards by which we review the evidence supporting a jury's finding. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When reviewing legal sufficiency, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Harrison v. Harrison*, 321 S.W.3d 899, 901 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

When reviewing factual sufficiency, we weigh all of the evidence in the record and only may overturn findings if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Graves v. Tomlinson*, 329 S.W.3d 128, 142 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)).

We employ a two-pronged analysis to review the division: (1) whether the trial court had sufficient information on which to make its determination and (2) whether the trial court abused its discretion by making a manifestly unjust or unfair property division. *See Evans v. Evans*, 14. S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A trial court abuses its discretion when it rules without supporting

11

evidence. *Id.* "An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence or where some evidence of a substantial and probative character exists to support the trial court's division." *Zieba*, 928 S.W.2d at 786. A trial court is authorized to consider a variety of factors, commonly referred to as the "*Murff*" factors. *See Murff*, 615 S.W.2d at 699 (relative earning capacity, business opportunities, relative financial condition and obligations, education, size of separate estates, probable need for future support). We may reverse the trial court's division only if the court clearly abused its discretion and if the error materially affects the court's just and right division of the property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732–33 (Tex. 1985).

Former section 3.408, in effect at the time of Steven's August 2006 divorce filing, and section 3.409 of the Family Code govern claims for reimbursement here. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 2, 2001 Tex. Gen. Laws 1679, 1682, *amended by* Act of April 30, 2007, 80th Leg., R.S., ch. 51, § 1, 2007 Tex. Gen. Laws 48, 48, *repealed by* Act of May 19, 2009, 81st Leg., R.S., ch. 768, § 11(5), 2009 Tex. Gen. Laws 1950, 1953; Tex. Fam. Code Ann. § 3.409 (West 2006). The trial court determines the rights of both spouses in a claim for reimbursement, applies equitable principles to determine whether to recognize the claim after taking into account all the relative circumstances of the spouses, and orders a division of the claim, if appropriate, in the manner that the court considers just and right, having due regard for the rights of each party. Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 2, 2001 Tex. Gen. Laws 1679, 1683–84 (amended 2007) (current version at Tex. Fam. Code § 7.007). The rule of reimbursement is purely an equitable one. *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982). It arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Id.* at 459. The party claiming the right of reimbursement has the

burden of pleading and proving that the expenditures were made and that they are reimbursable. *Id.* Reimbursement is not available as a matter of law, but lies within the broad discretion of the court. *Penick v. Penick*, 783 S.W.2d 194, 197–98 (Tex. 1988); *Vallone*, 644 S.W.2d at 459. A trial court may not recognize a marital estate's claim for reimbursement for the payment of child support, alimony, or spousal maintenance; the living expenses of a spouse or child of a spouse; contributions of property of a nominal value; the payment of a liability of a nominal amount; or a student loan owed by a spouse. Tex. Fam. Code Ann. § 3.409.

## 2. Reimbursement

In her third issue, Marsha argues that the trial court erred in allowing various invalid claims for reimbursement. She contends that the impermissible reimbursements were: $160,000 for living expenses and attorney's fees; (2) $76,925.85 for spousal support; (3) $34,251.75 in educational loans, (4) $4,500[7] from the sale of separate property, (5) $30,090.95 for her professional goodwill, (6) $3,502.20 for a 2006 income tax credit sent to her as a refund, (7) $398.77 for a 2005[8] property tax refund, and (8) $300 for an economic stimulus paid for her benefit.

The trial court issued a finding that the parties acquired community property during the marriage—listing the property with values determined by the court in its Exhibit A. The trial court issued another finding that "The Court's Division of Property, attached as Exhibit A, lists the Court's decision on how to divide the Community Estate." The court found that "The Court's Division of Property, attached as Exhibit A, also lists the liabilities of the community estate and reimbursements due to the Parties, with balances determined by the Court."

---

[7] Marsha claims this amount is $5,400. However, the record reflects that the trial court was assigning proceeds from the sale of a vehicle in the amount of $4,500.

[8] Marsha claims this was a 1998 property tax refund. However, the record reflects that the trial court was assigning a 2005 property tax refund in the precise amount of $398.77.

13

According to Exhibit A, only one of the items that Marsha challenges—her law school loans—was expressly treated by the trial court as a reimbursement to the community. Steven testified that the law school loans were Marsha's separate debt prior to marriage and that the community estate paid off those debts. Steven requested that the community estate be reimbursed for Marsha's separate law school loan debt.

Steven now acknowledges that repayment of a student loan is not a proper ground for reimbursement. *See* Tex. Fam. Code Ann. § 3.409(5). However, Steven contends that even if the trial court made an error in the characterization of the loan debt as a reimbursable claim, the error did not materially affect the just and right division of property. We agree that we are not required to remand here. *See Jacobs*, 687 S.W.2d at 733. The total assets in the community estate were valued at almost $1.17 million. Removing the amount of $34,251.75 provided in reimbursement as an asset to the community estate (divided equally between Steven and Marsha) and recalculating the percentage of each party's share of the community estate (net assets) leaves the percentage division virtually unchanged—50.01 (instead of 49.99) percent to Steven and 49.99 (instead of 50.01) percent to Marsha.

The other items Marsha challenges were not treated as reimbursement claims to the community from her separate estate, but rather were characterized as community assets and then assigned 100 percent to Marsha. Steven testified that he was not claiming any reimbursement for the court-ordered temporary spousal support he paid to Marsha, but rather a credit. Steven also presented evidence of and requested credit for court-ordered amounts paid to Marsha out of the court registry (funded from the sale of their Bellaire house) for living expenses and attorney's fees. In making a division of community property, the trial court may consider and make adjustments for the effect of temporary court orders. *See In re Marriage of Hammett*,

14

No. 05-14-00613, 2016 WL 3086126, at *7 (Tex. App.—Dallas June 1, 2016, no pet. h.) (mem. op.); *Herschberg v. Herschberg*, 994 S.W.2d 273, 278 (Tex. App.—Corpus Christi 1999, pet. denied); *Baccus v. Baccus*, 808 S.W.2d 694, 700 (Tex. App.— Beaumont 1991, no writ). We find no abuse of discretion in the trial court's adjustments here.

Steven further presented evidence of and requested credits based on Marsha's receipt of a property tax refund on their house, Marsha's sale of a community vehicle (a 2006 Toyota Solara) without his permission, and Marsha's receipt of an income tax refund and a stimulus payment. Given the record in this case, we cannot say the trial court abused its discretion by awarding these community credits in favor of Steven in the final decree. *See Marriage of Hammett*, 2016 WL 3086126, at *7.

With regard to the business interest in Marsha's law practice, Steven presented evidence of commercial value based on tax returns and Marsha's income. Marsha testified to gross annual revenue from her practice of approximately $32,000. Although Marsha describes the interest at stake as her professional goodwill, the trial court described the amount of $30,090.95 as the value of the community asset for the closely held business interest "Marsha Phillips Attorney & Counselor at Law." The record does not reflect that the trial court considered Marsha's professional goodwill as part of this valuation. Steven requested that the trial court award such business interest to Marsha as her separate property; the court instead assigned such interest to the community and assigned the asset 100 percent to Marsha. We do not find any abuse of the trial court's discretion in making a "just and right" division of this asset. *See Nowzaradan*, 2007 WL 441709, at *8 (no abuse of discretion where nothing in record suggested trial court's valuation of medical practice as part of community estate was erroneously premised on husband's professional goodwill); *see also Finn v. Finn*, 658 S.W.2d 735, 740–41, 746-47 (Tex. App.—Dallas 1983, writ ref'd n.r.e)

15

(husband's commercial goodwill in law firm, independent of personal ability, was asset of community estate).

Finally, Marsha asserts error in connection with Steven's reimbursement claim for certain attorney's fees related to the parties' first divorce proceeding. However, neither the decree nor the findings and conclusions indicate that the trial court awarded any reimbursement claim for attorney's fees. Instead, the trial court issued an express conclusion of law that neither party should recover on his or her claims for attorney's fees. In the final decree, the trial court ordered that each party was responsible for his or her own attorney's fees in the case.

We overrule Marsha's third issue.

### 3. Property division

Next, Marsha takes issue with the trial court's property division. Several of Marsha's complaints concern "the property" or "the assets" generally. Also, Marsha simply refers this court to her motion to modify the judgment for "most of the issues" she has regarding the "improper division of the assets" instead of providing clear and concise argument and authorities in her brief. *See* Tex. R. App. P. 38.1(i).[9] To the extent that Marsha presents arguments regarding specific characterizations or divisions of property contained in the trial court's findings, we address them.

Separate property is defined as that property owned or claimed by a spouse before marriage, acquired during the marriage by gift, devise, or descent, or as a recovery for personal injuries sustained during the marriage. Tex. Fam. Code Ann.

---

[9] Marsha cites Texas Rule of Civil Procedure 299, but fails to provide any explanation of what trial court findings may have been omitted, included, or should or can be presumed. Marsha also cites *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651 (Tex. 2013), in connection with her argument that attorney's fees cannot be reimbursed from community property. Again, the trial court did not permit any reimbursement for attorney's fees, but rather concluded that no party should recover on claims for attorney's fees and ordered that each party pay his or her own fees.

§ 3.001 (West 2006); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). Community property consists of the property, other than separate property, acquired by either spouse during marriage. Tex. Fam. Code Ann. § 3.002 (West 2006); *Barnett*, 67 S.W.3d at 111. All property possessed by either spouse during or upon dissolution of the marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a) (West 2006); *Barnett*, 67 S.W.3d at 111.

"The spouse claiming that certain property is 'separate' must trace and clearly identify the property claimed to be separate." *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Id.* "Property established to be separate remains separate property regardless of the fact that it may undergo mutations or changes in form; its separate character is not altered by the sale, exchange, or substitution of the property." *Barras v. Barras*, 396 S.W.3d 154, 167 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

To overcome the community property presumption, a spouse claiming assets as separate property must establish their separate character by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002); *Stavinoha*, 126 S.W.3d at 607; *see also* Tex. Fam. Code Ann. § 3.003(b). The clear and convincing standard is not satisfied when characterizing the property at issue as separate requires surmise or speculation by the court. *Zamarripa v. Zamarripa*, No. 14–08–00083–CV, 2009 WL 1875580, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2009, pet. denied) (mem.

op.). Any doubt as to the character of property should be resolved in favor of the community estate. *Id.*

First, Marsha disputes the characterization and division of Steven's Texaco 401(k) and Van Kampen (now Invesco) IRA. Marsha does not dispute that Steven initiated his Texaco 401(k) over a decade before they married, that he rolled funds over from the Texaco 401(k) into the Van Kampen IRA, and that she was granted only a portion of Steven's Texaco 401(k) tied to the two-year period of July 21, 1995 to July 21, 1997 pursuant to the PNA. Nevertheless, she contends that improper characterization and division resulted in "double and excessive awards to [Steven] with an arbitrary award of only 3.5% division community to [Marsha]."[10] Marsha also contends that the trial court permitted erroneous or no tracing of this asset.

With regard to assets and liabilities of the various estates, Steven submitted a financial information statement, a third amended inventory and appraisement, and a divorce inventory summary sheet. Steven testified that he initiated his Texaco 401(k) in 1979, prior to his marriage to Marsha; he resigned from Texaco in May 2000; and in June 2000, he rolled money from his Texaco 401(k) over into the Van Kampen IRA. Pursuant to part I, section A.2, of the PNA, Steven agreed "that all the monetary contributions and the growth thereof in [his] Texaco 401(k) plan . . . from July 21, 1995, through July 21, 1997, are [Marsha's] separate property."

Steven submitted his Texaco 401(k) statements as backup. Steven, who has a minor in mathematics, prepared a tracing spreadsheet based on those statements to

_____

[10] Marsha does not explain how she arrived at this "3.5% division community." The record reflects that the trial court did not attribute any of the Texaco 401(k) assets to the community and awarded Marsha zero percent of the community funds from the Van Kampen IRA. Marsha also states, "The amount during the two year period of the PNA was 47.75/52.26% split of the total account," presumably referring to the Texaco 401(k) since the Van Kampen IRA did not exist until 2000. She provides no citation for this contention, and nothing within part I of the PNA requires or supports such a division.

18

track the various property interests, including Marsha's separate property under the PNA.[11]  The spreadsheet included information regarding name changes and amounts over time in Steven's Texaco (now Chevron) 401(k) account.  The spreadsheet contained columns showing the date; the community's, Steven's, and the PNA part I's balances; the community's, Steven's, and part I's total percentages; contributions; company employee stock ownership plan and awards; dividends/capital gains; unrealized gain/loss minus fees; loan payments and loan balance;[12] withdrawals; and total balance.  Steven explained:

> To start with, I had the balance as effective July 1, 1995.  I had my separate balance was $305,382.35.  As I made additional contributions from my paycheck, the Part 1 of the postnup awarded those first two years from '95 to '97 to [Marsha].
>
> So I—as dividends and capital gains and gains and losses were occurring, I altered the percentage ownership that was my separate and what was her separate.
>
> And then when it got rolled over, also there was—after '97, then the contributions became community contributions.  So I started then having percentage changes across all three types of values.  And then when we rolled it over into the Van Kampen IRA on June 20th of 2000, the—all the community came out and then the rest of it that rolled over was my separate.
>
> So that the remaining balance of a little over, you know, $50,000 was her value plus my remaining separate.
>
> And then I've traced it from there on.

At the time of the Van Kampen IRA rollover, Marsha's separate balance in the Texaco 401(k) attributable to monetary contributions from July 1995 to July 1997

---

[11] Marsha objected to "the accuracy" of the spreadsheet and objected that Steven was not a CPA.  The trial court overruled these objections.

[12] Steven borrowed $50,000 against his Texaco 401(k) as a down payment for the parties' Bellaire house.  In part I, section A.8, of the PNA, Steven agreed that he would have sole responsibility for this loan.  Accordingly, the trial court found that the remaining loan balance in the amount of $24,258.60 was Steven's separate liability.

19

was $15,993.52. This amount plus $38,367.81 of Steven's separate balance (for a total of $54,361.33) was not rolled over into the Van Kampen IRA as of June 2000 and remained in the Texaco 401(k). However, the community balance of $9,828.05 from the Texaco 401(k) was rolled over to the Van Kampen IRA, leaving a community balance of zero in the Texaco 401(k). As of June 30, 2014, the total Texaco 401(k) contained funds totaling $256,342.35, of which $221,529.84 was Steven's separate property and $34,812.51 was Marsha's separate property.

Steven also prepared a tracing spreadsheet for the Van Kampen IRA and submitted backup account statements.[13] The spreadsheet included information regarding name changes and amounts over time of the two base funds—a growth fund and a technology fund—in the account. The spreadsheet contained columns showing the date, the community's and Steven's separate balances, the community's and Steven's total percentages, the community's and Steven's separate shares, the share price, capital gains and fees, total number of shares, and total balance.

To produce his tracing spreadsheet, Steven "went through each statement and pulled the information from it" so there would be "no breaks in the dates and the amounts of money." As of June 20, 2000, $701,240.89 was rolled over from Steven's Texaco 401(k), which consisted of $691,412.84 of Steven's separate property and $9,828.05 of community property. These amounts were split equally between the growth and technology funds. Steven testified that he did not add or withdraw any funds from the Van Kampen IRA. As of June 30, 2014, the total Van Kampen IRA contained funds totaling $482,970.10, of which $476,208.52 was Steven's separate property and $6,761.58 was community property. Steven stated that these numbers were accurate.

---

[13] Marsha again objected to "the accuracy" of the spreadsheet and objected that Steven was not a CPA. The trial court overruled these objections.

The trial court found that Steven's separate property included $476,208.52 in assets in the Van Kampen IRA and $221,529.84 in the Texaco 401(k). The trial court also found that the community estate included $6,761.58 in assets in the Van Kampen IRA and awarded Steven 100 percent of this amount. The trial court found that Marsha's separate property included $34,812.51 in assets in the Texaco 401(k) pursuant to part I, section A.2, of the PNA.

Looking at all the evidence in the light most favorable to the separate property findings with regard to the Van Kampen IRA and the Texaco 401(k), we conclude that it sufficiently satisfies the clear and convincing standard; the trial court reasonably could have formed a firm belief or conviction that Steven and Marsha were entitled to the separate property amounts at issue.[14] *See Barras*, 396 S.W.3d at 172. Nor does the record reflect that the trial court's findings were against the great weight and preponderance of the evidence. *See id.* at 173. To the extent that Marsha complains about the "division community" of the Van Kampen IRA, while the trial court awarded Steven 100 percent of those community assets, the court awarded Marsha 100 percent of other community assets, including funds in three defined contribution plans. Moreover, if any funds remained in the Texaco 401(k) after distribution of Steven's and Marsha's separate property, the court characterized such

---

[14] Marsha points to, and we have located, no authority for her assertion that the trial court erred by allowing Steven's "[n]on-expert testimony . . . on the tracing of the Invesco, Texaco, VanKampen, and the AXA IRA accounts." As long as the spouse claiming the separate nature of the property overcomes the presumption of community property by clear and convincing evidence, such as by clearly identifying the origin of and tracing funds into or out of a particular account, we uphold the trial court's findings awarding that spouse such amount. *See, e.g., Lindsey v. Lindsey*, 564 S.W.2d 143, 146 (Tex. Civ. App.—Austin 1978, no writ); *Skinner v. Skinner*, 202 S.W.2d 318, 319 (Tex. Civ. App.—San Antonio 1947, no writ). Marsha provides no specific argument with regard to any other account besides the Van Kampen IRA and the Texaco 401(k). In any event, Steven provided similar testimony and backup account documents for his AXA IRA and his Texaco retirement plan, as well as a spreadsheet for the AXA IRA, to trace the various estates' balances, including Marsha's separate balances attributable to the two-year period covered by the applicable sections of the PNA.

21

balance as a community asset and awarded it equally between them. And, as discussed above, the trial court's division of community property (net assets) was very, almost exactly, evenly split. We conclude that Marsha has not met her burden to demonstrate that the trial court's division was so unjust and unfair as to constitute an abuse of discretion.[15] *See Marriage of O'Brien*, 436 S.W.3d at 82.

We overrule Marsha's fourth issue.

## D. Contests to Marsha's affidavit of indigence

In her fifth issue, Marsha argues that the trial court erred in connection with allowing a hearing on, and thereafter sustaining, contests to Marsha's affidavit of indigence. Marsha also contends that the trial court erred because it did not simultaneously hear her motion for appellee to pay appellate records costs.[16]

Here, the reporter's record from the 2009 enforceability portion of the trial was filed on March 27, 2015. The reporter's record from the property division portion of the trial was filed on April 16, 2015. The clerk's record also was filed on April 16, 2015. A supplemental clerk's record was filed on July 31, 2015. The complete appellate record was filed, and Marsha filed both original and reply briefs on her own behalf. Therefore, we conclude that any error in the trial court's rulings regarding Marsha's indigence and payment of records costs has been rendered moot. *See In Interest of R.H.*, No. 01-14-00874-CV, 2015 WL 4594557, at *10 (Tex. App.—Houston [1st Dist.] July 28, 2015, no pet.) (mem. op.).

We overrule Marsha's fifth issue.

---

[15] Marsha reasserts that the trial court erroneously considered her professional goodwill as part of the community estate. Again, the record does not reflect such treatment here.

[16] The record, however, reflects that the trial court's hearing on October 22, 2014 considered and ruled on both the contests and Marsha's request that Steven or the community pay records costs.

22

**E. Federal Rule of Civil Procedure 52(a)**

Marsha argues that the trial court erred under Federal Rule of Civil Procedure 52(a) with regard to its findings of facts and conclusions of law.[17] Rule 52 governs findings and conclusions in actions tried on the facts without a jury in federal court. Fed. R. Civ. P. 52(a); *see id.* 1 (federal rules of civil procedure govern civil actions and proceedings in United States district courts). We conclude that the state trial court could not have run afoul of rule 52(a) because it did not apply.

In addition, Marsha includes various additional complaints in an argument section entitled, "Errors in weighing evidence." We already have addressed and rejected Marsha's "legal sufficiency" challenges in connection with her reimbursement and property division issues. Marsha has waived her other "legal sufficiency" arguments by failing to cite to the record or to any particular legal authority. Likewise, for most of her contentions described as "factual sufficiency," Marsha fails to include any citations to the record or to legal authority. Therefore, Marsha has waived these arguments. *See* Tex. R. App. P. 38.1(i); *Cantu*, 2009 WL 2589253, at *3; *San Saba Energy*, 171 S.W.3d at 338.[18]

We overrule this issue.

**F. Federal Rule of Civil Procedure 60(b)(6)**

In her seventh issue entitled, "Errors in managing the trial," Marsha asserts that she is entitled to equitable relief under Federal Rule of Civil Procedure 60(b)(6) because mishandling of the case denied her due process, led to an improper judgment, and deprived her of her rights. Rule 60(b)(6) provides that a federal court may

---

[17] Marsha does not expressly include a rule 52(a) issue within her "argument and authori[tie]s" section, but does list it as her sixth issue presented.

[18] Marsha also argues in her sixth issue that "[t]he Judgment is sufficiently extraordinary and compelling to warrant relief" under Federal Rule of Civil Procedure 60(b)(6). We address this contention in her seventh issue.

23

relieve a party from a final judgment, order, or proceeding for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). We conclude that rule 60(b)(6) does not apply to this case to allow for, much less entitle Marsha to, any such discretionary relief. Nor do the two cases from the Court of Civil Appeals of Arkansas considering motions filed under Arkansas Rule of Civil Procedure 60(b)(6) that Marsha cites persuade us otherwise.

Marsha also cites certain sections of the Americans with Disabilities Act governing such act's enforcement, as well as the Fourteenth Amendment, to support her position that the trial court's proceedings and Marsha's inability to participate in them (due to lawsuit abuse post-traumatic stress disorder) deprived her "of rights necessary for equal access to justice." In addition, Marsha cites "the MHDDCA." If "the MHDDCA" refers to Illinois's Mental Health and Developmental Disabilities Act, such act governs the confidentiality of communications between recipients of mental health services and therapists providing mental health services in the state of Illinois. We cannot conclude that the trial court's proceedings failed to afford Marsha with due process or any other alleged rights under any of these authorities.[19]

Marsha also cites section 312.005 of the Texas Government Code, but fails to link the consideration of legislative intent when interpreting statutes to any particular statute, much less to one applicable in this case.

Finally, Marsha includes various additional complaints about the trial proceedings, but fails to include any citations to the record or to legal authority. Therefore, Marsha has waived these arguments. *See* Tex. R. App. P. 38.1(i); *Cantu*, 2009 WL 2589253, at *3; *San Saba Energy*, 171 S.W.3d at 338.

We overrule Marsha's final issue.

---

[19] Marsha includes this particular argument in her sixth issue, but we choose to address it in her rule 60(b)(6) issue.

### III. CONCLUSION

Having considered and overruled all of Marsha's issues, we affirm the trial court's final decree of divorce.


/s/    Marc W. Brown
        Justice


Panel consists of Justices Jamison, Donovan, and Brown.